Tracey **WALLACE**, Respondent,

v.

Melvin **VAN PELT**, Appellant.

No. WD 54658.

Missouri Court of Appeals, Western District.

June 23, 1998.

Larry L. Zahnd, Zahnd, Ross and Thomson, Maryville, for appellant.

Tracey Wallace, pro se.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

Melvin Van Pelt appeals from a full order of protection entered by the Circuit Court of Nodaway County pursuant to the Adult Abuse Act, §§ 455.010 to 455.085.[1] That order provided that Van Pelt shall not stalk, abuse, threaten to abuse, molest or disturb the peace of Tracey Wallace wherever she may be and that he shall not enter or stay upon the premises of Mrs. Wallace's dwelling.

Van Pelt and Mrs. Wallace live next door to each other on East Third Street in Maryville, Missouri. Between the two houses are Van Pelt's driveway and a fence separating the two backyards.

Mrs. Wallace operates a day care service at her home. Up until January, 1997, Van Pelt allowed the parents of the children in day care to use his driveway to access the Wallace's house. About that time, Van Pelt complained to Wallace and her husband that Mrs. Wallace and the people using his driveway were not friendly to him. Van Pelt eventually put up "no parking" and "private drive" signs. During the winter and spring of 1997, Mrs. Wallace asked the people coming to her house not to use Van Pelt's driveway.

During the spring, Van Pelt and Mrs. Wallace did not speak to each other. On May 2, 1997, Van Pelt asked Mr. Wallace to come over to his house. When Mr. Wallace arrived, Van Pelt told him that he would do something drastic if Mrs. Wallace did not start being nice to him. Mr. Wallace and Van Pelt proceeded to have a conversation in which they agreed to get together with Mrs. Wallace, their minister, and a mutual uncle to try to work things out between Van Pelt and Mrs. Wallace.

On May 3, 1997, Mrs. Wallace was talking with one of the parents that used her day care service when she heard Van Pelt yell at some of the children in the backyard. Mrs. Wallace had allowed the children to build a fort out of some bricks from an old garage in the backyard and seven or eight of those bricks had ended up in Van Pelt's yard. When Van Pelt saw Mrs. Wallace, he yelled, "You get over here and pick up those bricks." Mrs. Wallace refused and told Van Pelt to leave her alone. As Mrs. Wallace walked toward her house, Van Pelt walked along the fence and told her, "Lady, I didn't do to you what you think I did but I will get you worse."[2]

---

1. All statutory references are to RSMo Cum. Supp.1997 unless otherwise noted.

2. According to Mrs. Wallace's testimony, at some point while following her up the fence-line, Van Pelt also said, "I have proof."

The following day a DFS officer came to Mrs. Wallace's house to investigate a complaint that had been made alleging that the children in Mrs. Wallace's care had thrown bricks into a yard and were allowed to play in the street. While she was originally scared by Van Pelt's "get you worse" comment, once the DFS officer arrived, Mrs. Wallace understood this to be what Van Pelt meant.

On June 4, 1997, Mrs. Wallace filed a petition for an order of protection for adult abuse.[3] In her petition, Mrs. Wallace claimed that Van Pelt had intentionally harassed and stalked her by the following acts:

5-3-97 yelled at me to get over to his yard and pick up approx. 7-8 bricks that had fallen over the property line. I told him "no" and he got even madder and then proceded [sic] to tell me that "I didn't do what you think I did, but I will do worse!"

5-4-97 the DFS came to my door and said that accusations were made against me and she needed to talk to my children. She took them upstairs and talked to them. Then she came down and asked me to respond to the accusations. She said that she found it, the accusations, unfounded. She left and I called MPS—because this is definately [sic] harrassment [sic].

The petition went on to state:

I am afraid of respondent and there is an immediate and present danger of abuse to or stalking of me because: because he's playing weird emotionally/mentally harmful games that are embarrassing, stressful and degrading to me and my family.

In response to that petition, the Circuit Court of Nodaway County entered an *ex parte* order of protection that same day. Based on the allegations in the petition, the court found that there was "an immediate and present danger of abuse to petitioner, or petitioner has been a victim of stalking by respondent, and there is good cause to issue

an order of protection." The Court also set a hearing for June 17, 1997.

Following a continuance, on July 7, 1997, a hearing was held to determine whether a full order of protection should be granted. On July 21, 1997, the court entered its Findings of Fact and Conclusions of Law. The court found that Van Pelt had stalked Mrs. Wallace as defined by § 455.010(10) and entered a full order of protection to be effective through July 1, 1998.[4]

Van Pelt brings three points on appeal.[5] In his first point, Van Pelt challenges the sufficiency of the evidence to support the issuance of the full order of protection. In his second point, Van Pelt claims that Mrs. Wallace's petition failed to state a claim for which relief could be granted. Finally, Van Pelt claims that the trial court erred in failing to make specific requested findings of fact.

Because of our disposition of Van Pelt's first point, we need not address his Points II and III. To summarize his argument in Point I, Van Pelt contends the trial court erroneously construed and applied the anti-stalking statute because there was no substantial evidence to support a finding that: (a) Van Pelt intended by his conduct to purposely and repeatedly harass Mrs. Wallace; (b) his conduct served no legitimate purpose; and (c) his conduct would cause a reasonable person to suffer substantial emotional distress. In other words, Van Pelt contends Mrs. Wallace failed to show his conduct met the definition of "stalking" found in the statute.

In reviewing this judge tried case, we will sustain the trial court's order unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case. *Mathis v.*

3. Mrs. Wallace's used a fill-in-the-blank form provided by the court to file her petition against Van Pelt.

4. Section 455.040 now provides that "if a petitioner has proved the allegation of abuse or stalking by a preponderance of the evidence, the court shall issue a full order of protection for a

period of time the court deems appropriate, except that the protective order shall be valid for at least one hundred eighty days and not more than one year."

5. No brief was filed by respondent.

*Jones Store Co.,* 952 S.W.2d 360, 366 (Mo. App. W.D.1997). We defer to the trial court's determinations relating to credibility and consider only those facts and inferences supporting the judgment. *Devor v. Blue Cross & Blue Shield,* 943 S.W.2d 662, 665 (Mo.App. W.D.1997). Because the trial judge is in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded. *Parkhurst v. Parkhurst,* 793 S.W.2d 634, 637 (Mo.App. E.D.1990).

Anti-stalking statutes are relatively new in this country. In response to several highly publicized murders by stalkers, California was the first state to pass an anti-stalking statute in 1990. Cal.Penal Code § 646.9 (West 1991), *amended by* 1992 Cal. Stat. 627. *See* K. McAnaney, L. Curliss & C.E. Abeyta– Price, *From Imprudence to Crime: Anti– Stalking Laws,* 68 Notre Dame L.Rev., 819, 823–24 (1993). According to one writer, the growing publicity and concern over the threat stalkers pose to their victims has resulted in at least 48 states adopting criminal anti-stalking legislation since 1990. M. Katherine Boychuk, *Are Stalking Laws Unconstitutionally Vague or Overbroad?,* 88 NW U.L.Rev. 769 n. 1 (1994). Missouri adopted its criminal anti-stalking statute, § 565.225, in 1993. However, Missouri went further and also amended the Adult Abuse Act to authorize protective orders in cases of stalking.

Van Pelt contends his behavior does not satisfy the definition of "stalking" in that Mrs. Wallace failed to show that he possessed the requisite intent, that his behavior had no legitimate purpose, and that his behavior would cause a reasonable person to suffer substantial emotional distress. Resolution of this assertion requires review of the applicable statutory provisions.

 Statutory interpretation is a question of law. *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246, 248 (Mo. banc 1981). When interpreting a statute, our primary role is to ascertain the intent of the legislature from the language used in the statute and, whenever possible, give effect to that intent. *Sullivan v. Carlisle,* 851 S.W.2d

510, 512 (Mo. banc 1993). In determining legislative intent, the words used in the statute are to be considered in their plain and ordinary meaning. *Trailiner Corp. v. Director of Revenue,* 783 S.W.2d 917, 920 (Mo. banc 1990). "Further insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of enactment." *Sermchief v. Gonzales,* 660 S.W.2d 683, 688 (Mo. banc 1983); *See also Schneider v. State of Missouri, Division of Water Safety,* 748 S.W.2d 677, 678 (Mo. banc 1988) ("The legislative intent and meaning of the words can, in many instances, be found in the general purposes of the legislative enactment."). Finally, where statutory language is clear, unambiguous and admits of one meaning, there is no room for construction. *Strunk v. Hahn,* 797 S.W.2d 536, 546 (Mo.App.1990).

Section 455.020 provides:

Any adult who has been subject to abuse by a present or former adult family or household member, or who has been the victim of stalking, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such abuse or stalking by the respondent.

§ 455.020.1, RSMo 1994. Abuse by harassment is defined as:

"**Abuse**" includes but is not limited to the occurrence of any of the following acts ...

\* \* \* \* \*

"**Harassment**", engaging in purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to another adult and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner. Such conduct might include, but is not limited to:

a. Following another about in a public place or places;

b. Peering in the window or lingering outside the residence of another; but does

not include constitutionally protected activity;

§ 455.010(1); *State v. Schleiermacher*, 924 S.W.2d 269, 273 (Mo. banc 1996). Stalking is also defined by statute:

> **"Stalking"** is when an adult purposely and repeatedly harasses or follows with the intent of harassing another adult. As used in this subdivision, **"harasses"** means to engage in a course of conduct directed at a specific adult that serves no legitimate purpose, that would cause a reasonable adult to suffer substantial emotional distress. As used in this subdivision, **"course of conduct"** means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct."

§ 455.010(10) (emphasis in original).

■ Mrs. Wallace's petition and the trial court's findings of fact and conclusions of law make it clear that the case at bar was one based on stalking as defined in § 455.010(10), and did not involve a claim or finding of abuse by harassment pursuant to § 455.010(1). This is an important distinction because the definition of "harasses" in the former statute requires a significantly different evidentiary showing than does the definition of "harassment" in the latter statute. Stalking, pursuant to § 455.010(10), does not require that the **petitioner** actually suffer substantial emotional distress, but rather that the conduct would cause a **reasonable person** to suffer such distress. Abuse by harassment, prescribed by § 455.010(1), requires a dual showing, that the conduct must be such as to cause a **reasonable person** to suffer substantial emotional distress, **but also** that it must actually cause such distress to the **petitioner**. *See State v. Schleiermacher*, 924 S.W.2d at 273.

To be entitled to relief under the anti-stalking law, the petitioner must prove, by a preponderance of the evidence, that he or she has been the victim of stalking. §§ 455.020.1 and 455.040.1. To do so, the evidence must establish that the respondent has **purposely** and **repeatedly** harassed or followed the petitioner with the intent to harass. § 455.010(10). Thus, intent is a necessary element of stalking under the statute. "Purposely" is defined as "by design; intentionally; with predetermination." *Webster's New Twentieth Century Dictionary* 1465 (2d ed.1979). By using the word "purposely," the legislature has provided that it is the intent of the perpetrator that triggers the statute. Moreover, the use of the word "repeatedly" adds to the specific intent that must exist. It is not until one engages in harassment more than once that the conduct may constitute stalking.

Harassment is established when the evidence reveals that the respondent has a) engaged in a course of conduct b) directed at the petitioner c) that serves no legitimate purpose, and d) that would cause a reasonable person to suffer substantial emotional distress. § 455.010(10). Finally, the course of conduct that must be established is 1) a series of acts, 2) over a period of time, no matter how short, 3) demonstrating a continuity of purpose. *Id.* For purposes of the statute, constitutionally protected activity cannot form the basis of a course of conduct.

The evidentiary findings made by the trial court reflect the following behavior on the part of Van Pelt:

6. That Respondent has been complaining to Petitioner and her husband that the individuals going to Petitioner's home were not friendly to him, would not wave at him and that Petitioner was not friendly to him.

9. That during the spring when both parties were on their properties they did not speak to each other.

10. That during May 1997, Respondent threatened Petitioner's husband that if they did not start being nice to Respondent, he was going to do something drastic.

11. That during the first part of May 1997, Respondent yelled at Petitioner telling her to come into his yard to pick up bricks and that when she refused, Respondent became angry and followed Petitioner along the fence line yelling that he was going to get her worse.

12. That any alleged complaints to the Missouri Division of Family Services over

the operation of Petitioner's day care business may have been constitutionally protected activity, but were not considered as a basis for this order.

Based on these findings, the trial court held that Van Pelt had "stalked" Wallace within the meaning of § 455.010(10).

While the factual findings of the trial court were sufficiently supported by the evidence, those findings are insufficient to establish stalking under § 455.010(10). As noted, *supra*, stalking entails purposeful and repeated harassment of an individual. Harassment involves a course of conduct directed at an individual that serves no legitimate purpose and that would cause a reasonable person to suffer substantial emotional distress.

As used in the context of § 455.010(10), the term "legitimate" means "sanctioned by law or custom; lawful; allowed." *Webster's New Twentieth Century Dictionary* 1035 (2d ed.1979). As noted, *supra*, the statutory definition of the phrase "course of conduct" explicitly excludes constitutional activity. The legislature wisely included this provision to protect the law from a constitutional challenge that it proscribes constitutionally protected conduct. It severs unconstitutional applications from the reach of the statute. By doing so, it permits the courts to respect the legislature's goals, while assuring that rights are not trampled. *See* M. Katherine Boychuk, *Are Stalking Laws Unconstitutionally Vague or Overbroad?*, 88 NW U.L.Rev. 769, 792 (1994). Nevertheless, the statute prohibits conduct which, although it might otherwise be constitutional, is engaged in with the specific intent to harass another in such a way that it would cause a reasonable person to suffer substantial emotional distress. Thus, for there to be a "course of conduct" such as is proscribed by the statute, the conduct must be such that it serves no legitimate purpose.

In the case *sub judice*, Van Pelt's occasional requests that the Wallaces and the parents using his driveway be nicer to him and wave were clearly lawful and constitutionally protected. Similarly, not speaking with Mrs. Wallace during the Spring was a legitimate and constitutionally protected behavior. Likewise, Van Pelt could legitimately voice his displeasure at finding his neighbors' bricks in his yard.

The only remaining conduct noted by the trial court were the vague threats made by Van Pelt in his comment to Mr. Wallace that he would "do something drastic" if Mrs. Wallace were not nicer to him and his comment to Mrs. Wallace that he was "going to get her worse" when she refused to remove the bricks from his yard. Even were we to find that these statements constituted threats such that they were not constitutionally protected speech, they are not sufficient to constitute "stalking."

The "something drastic" comment was made during a conversation occurring when Mr. Wallace went to Van Pelt's house to talk with him. Van Pelt indicated that he wanted Mrs. Wallace to be nicer to him. According to Mr. Wallace's testimony, the two proceeded to have a reasonable conversation attempting to work out their problems. In the context in which this statement was made, we cannot interpret it to be a purposeful attempt to cause Mrs. Wallace substantial emotional distress nor do we believe that the comment would cause such distress in a reasonable person.

Likewise, we cannot say that Van Pelt's statement that he would "get her worse" would cause substantial emotional distress in a reasonable person. Even accepting Mrs. Wallace's testimony that she initially thought "getting her worse" might mean physical harm, she further testified that the next day she realized that Van Pelt meant calling DFS. She stated that she no longer felt physically threatened, but that she felt calling DFS was harassment. In the context in which they were made, Van Pelt's acts of complaining to his neighbors twice and making vague threats in the course of those complaints are not the type of conduct which would instill substantial emotional distress in a reasonable person.

■ The legislature chose not to define the phrase "substantial emotional distress." However, this does not mean we are left without sources for guidance and we are, of course, mindful that the words used in a statute are to be given their plain and ordi-

nary meaning. *Trailiner Corp. v. Director of Revenue*, 783 S.W.2d 917, 920 (Mo. banc 1990). In *Pretsky v. Southwestern Bell Telephone Company*, 396 S.W.2d 566 (Mo.1965), our Supreme Court recognized the tort of extreme and outrageous conduct, essentially adopting Restatement (Second) of Torts § 46 (1965). The crux of the tort is the intentional infliction of emotional distress by conduct which is outrageous in character and extreme in degree. *Hester v. Barnett*, 723 S.W.2d 544, 560 (Mo.App.1987). The comments to § 46 are instructive as to the meaning ordinarily attached to the term "emotional distress." The term travels under various labels, "such as mental suffering, mental anguish, mental or nervous shock, or their like." Restatement (Second) of Torts § 46, cmt. j (1965). "It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Id.* This is consistent with the dictionary definitions of the individual words "emotion" and "distress." "Emotion" is defined as "strong, generalized feeling," or "any specific feeling," and "any of various complex reactions with both psychical and physical manifestations, as love, hate, fear, anger, etc." *Webster's New Twentieth Century Dictionary* 594 (2d ed.1979). And, "distress," as a noun, is defined as "extreme pain; anguish of body or mind; great unhappiness." *Id.* at 535. Thus, the term "emotional distress," as used in the statute, means a general or specific feeling of mental anguish, including all of the unpleasant mental reactions enumerated above. In addition, it is implicit that the emotional distress must be on-going, that is continuous, or occurring repeatedly, based on the conduct bringing it about, not just a momentary or single incident of such distress.

We next turn to the word "substantial," which conveys a variety of meanings depending on the context in which it is used. As used in the statute, it is clearly intended to signify "considerable size or amount." *Webster's New Twentieth Century Dictionary*, 1817 (2 ed.1979). It is doubtful that total emotional tranquillity can be achieved. Some level of transient or less serious emotional distress is a part of life resulting from co-existing with other human beings. Restatement (Second) of Torts § 46, cmt. j (1965). Thus, by using the word "substantial" preceding the term "emotional distress," the legislature declared that the offending conduct must be such as would produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living. On the other hand, it is significant that the legislature did not specify "*severe* emotional distress" as is required by § 46 for the tort of extreme and outrageous conduct. This type of distress must be so great "that no reasonable man could be expected to endure it." *Id.* Likewise, "substantial emotional distress" is not equivalent to "serious emotional injury" as defined in § 556.061(27). *State v. Martin*, 940 S.W.2d 6, 9 (Mo.App. W.D.1997). Thus, by using the word "substantial," the legislature intended to require that the offending conduct bring about a significantly higher level of emotional distress than is routinely experienced in daily life, but which need not be so severe as to be uneducable by the average person.

Accordingly, the stalking provision of the Adult Abuse Act was not meant to be a panacea for the minor arguments that frequently occur between neighbors. By using the phrase "substantial emotional distress," the legislature declared that the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living. "Conduct that merely causes alarm or distress to the victim but which would not cause substantial emotional distress to a reasonable person does not qualify as harassment." *State v. Schleiermacher*, 924 S.W.2d 269, 274 (Mo. banc 1996).

As noted previously, Van Pelt's conduct did not rise to the level of provoking a reasonable person to suffer substantial emotional distress as contemplated by the statute. Accordingly, the trial court erred in entering the full order of protection against Van Pelt.

Finally, a cautionary note is in order. In amending the Adult Abuse Act to include stalking, our legislature responded to increased public awareness and media attention devoted to the stalking of an individual. The laudatory purpose is to prevent potential violence, and unnecessary and unjustified infliction of emotional distress. However, "[a] careful balance must be achieved for a statute addressing stalking to be effective. Stalking statutes must be defined as broadly as possible to maximize victim protection, but narrowly enough to prevent serious abuse." *State v. Saunders*, 886 P.2d 496, 497 (Okl. Crim.App.1994). The potential for abuse of the stalking provision of the Adult Abuse Act is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having been found to be a stalker. Moreover, such a finding could lead to criminal prosecution for violation of the criminal stalking statute, § 565.225. Thus, it is incumbent that the trial courts exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act and in making sure that sufficient credible evidence exists to support all elements of the statute before entering a protective order.

The judgment is reversed and the cause is remanded to the trial court with instructions to vacate the full order of protection.

All concur.