**STATE of Missouri, Respondent,**

v.

**Brett M. BAKER, Appellant.**

**No. WD No. 58215.**

Missouri Court of Appeals,
Western District.

Feb. 13, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2001.

Richard Scheibe, Moberly, for Appellant.

Michael Fusselman, Pros. Atty., Moberly, for Respondent.

Before HOLLIGER, P.J., LOWENSTEIN and NEWTON JJ.

HAROLD L. LOWENSTEIN, Judge.

In August of 1999, the appellant, Brett Baker, was charged by information with stalking, § 565.225.2,[1] a class A misdemeanor. After a jury trial Baker was found guilty and was sentenced as a prior offender, § 558.016, to five months in the Howard County jail. Because this court finds that there was sufficient evidence to convict Baker of stalking under § 565.225.2, the judgment of the trial court is affirmed.

## I.

In his sole point on appeal, Baker challenges the sufficiency of the evidence supporting his conviction. Baker specifically argues that there was insufficient evidence to prove that he engaged in a "course of conduct" to harass Maria Tickner, and to prove that she suffered from "substantial emotional distress."

### Standard of Review

In determining the sufficiency of the evidence on appeal, this court views the evidence and all inferences drawn therefrom in the light most favorable to the verdict, and it disregards evidence and inferences contrary to the verdict. *State v. Ervin,* 979 S.W.2d 149, 159 (Mo. banc 1998). An appellate court neither weighs the evidence, nor determines the reliability or credibility of witnesses, but rather limits its determination to whether there is substantial evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. *State v. Hill,* 970 S.W.2d 868, 872 (Mo.App.1998). "Substantial evidence is evidence from which the trier of fact could reasonably find the issue in harmony with the verdict." *State v. Gomez,* 863 S.W.2d 652, 655 (Mo.App.1993).

To convict Baker of stalking under § 565.225.2, the State must prove beyond a reasonable doubt that Baker purposely and repeatedly harassed or followed Maria Tickner with the intent of harassing her. "Harasses" is defined in § 565.225.1(3) as "engag[ing] in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person to suffer substantial emotional distress, and that actually causes substantial emotional distress to that person." The information charging Baker with stalking stated that "on or about March 1999 through April 1999 ... the defendant repeatedly and purposely harassed [Maria Tickner] by following her, looking into her trailer, and/or shining a light into her trailer at night and thereby caused substantial emotional distress to M.T."

### A. Course of Conduct to Harrass

Baker argues that the evidence presented at trial was insufficient to prove that he engaged in a "course of conduct," under § 565.225.1(1). A course of conduct is defined in § 565.225.1(1) as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose...."

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Ms. Tickner testified that in January of 1999, Baker, her former boyfriend, called her numerous times. After Baker got out of jail[2] in March of 1999, he visited her trailer in Moberly, Missouri, on several occasions, knocking loudly on the door and yelling that he needed to see her. Baker pounded on the trailer so hard that it left dents.

Ms. Tickner also testified that one day, in March of 1999, she came home and noticed that her trailer smelled of gas. Ms. Tickner investigated and found that the pilot lights to all of her gas appliances were blown out. Ms. Tickner also noticed her bathtub and sink fixtures were loosened, the temperature on her freezer had been turned all the way up, and a folder containing some of her personal papers was missing. Ms. Tickner testified that Baker knew the folder was important to her, and that he had taken it from her in the past. Two days after the folder was taken, she found the folder and a coat hanger wire under the driver's floor mat of her car.

The next incident occurred when Ms. Tickner went to pick up her son, Chris, from tennis practice at school. On their way home, Chris asked to stop at a Subway sandwich shop. While on their way they saw Baker, who turned in front of them in his vehicle. While at the sandwich shop, Ms. Tickner stayed in her vehicle and she noticed Baker drive by again. After leaving the sandwich shop, Ms. Tickner drove through a strip mall parking lot heading towards the Save More grocery store and encountered Baker across from her at a stop sign. Baker passed by again as she waited for Chris to come out of the grocery store.

Approximately two weeks later, Ms. Tickner was taking a walk near her home. She saw Baker's car stopped at an intersection across from her. Baker's car was headed in the opposite direction of the way Ms. Tickner was walking. Baker pulled in a driveway and headed down the road in the direction of Ms. Tickner.

On the Saturday morning before Easter at 3:00 a.m., Ms. Tickner awoke to a light shining in her face. She looked out of her window and saw Baker standing outside holding the light. She told him, "Get out of here," and watched him walk away from the mobile home.

Finally, in April of 1999, Ms. Tickner drove her son to Wal–Mart to return a watch. Ms. Tickner stayed in the car and waited for her son. While sitting in the car, Ms. Tickner saw Baker walk by in front of her car. He pointed down and made an angry expression at her.[3]

Baker's acts, such as continued knocking on her door, the intrusions into her trailer, and the shining of a light in her bedroom, were performed with the purpose of frightening and harassing Ms. Tickner. As such, the evidence was sufficient for the jury to find that Baker engaged in a "course of conduct" to harass Ms. Tickner.

### B. Substantial Emotional Distress

■ It was also necessary for the state to prove that Ms. Tickner suffered from "substantial emotional distress." "A verdict of guilty must rest on proof beyond a reasonable doubt of each element of the crime charged against the defendant.' " *State v. Dawson,* 985 S.W.2d 941, 946 (Mo.

---

**2.** It is unclear from the record why Baker was in jail and whether it had anything to do with Ms. Tickner.

**3.** Ms. Tickner also testified that one morning she woke up in her bed to find Baker standing over her watching her sleep. The record does not indicate when this occurred.

App.1999) (quoting *State v. Conway*, 786 S.W.2d 165, 168 (Mo.App.1990)).

■ "Substantial emotional distress" is not defined in § 565.225. *State v. Martin*, 940 S.W.2d 6, 8 (Mo.App.1997). Since the legislature chose not to define "substantial emotional distress," the fact finder is to apply the terms in "their commonly understood meaning[s]." *Id.* at 9. In 1998, this court set out in *Wallace v. Van Pelt*, 969 S.W.2d 380 (Mo.App.1998) the plain and ordinary meaning of the phrase "substantial emotional distress" as used in § 455.010(10), which defines stalking under the Adult Abuse Act, §§ 455.010 to 455.085. There too, the legislature had declined to define the phrase. As the definition of stalking in § 455.010(10) is substantially similar to that of § 565.225, this court's interpretation of the plain and ordinary meaning of "substantial emotional distress" in *Wallace* is instructive.

■ The term "emotional distress" means "a general or specific feeling of mental anguish" such as "fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." *Id.* at 386. "It is implicit that the emotional distress must be on-going, that is continuous, or occurring repeatedly, based on the conduct bringing it about, not just a momentary or single incident of such distress." *Id.* Turning to the word "substantial," preceding the term "emotional distress" this court in *Wallace* stated:

> Thus, by using the word "substantial" preceding the term "emotional distress," the legislature declared that the offending conduct must be such as would produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living…. Thus, by using the word "substantial," the legislature intended to require that the offending conduct bring about a significantly higher level of emotional distress than is routinely experienced in daily life, but which need not be so severe as to be uneducable by the average person.

*Id.*

■ Here, Ms. Tickner testified that she felt apprehension and was afraid when she encountered Baker after picking her son up from tennis practice, when she saw Baker turn and head in her direction during her walk, when he walked in front of her car at Wal–Mart, and when he shined the light in her face through the window of her trailer. Ms. Tickner also testified that with Baker out of jail, she felt like her life was in danger because he would be able to carry out the threats he had made to her in the past.

Ms. Tickner's son testified that she cried sometimes and started to lock the doors at night. Jack Buckman, Ms. Tickner's brother testified that "she was emotionally scared that [Baker] would come over and—and hurt her or physically violent."

Section 565.225.1(3) required Baker's conduct directed towards Ms. Tickner to be such that it would have caused a reasonable person to suffer substantial emotional distress and to have actually caused Ms. Tickner substantial emotional distress. The evidence recited *supra* would have been sufficient to cause both a reasonable person and Ms. Tickner "substantial emotional distress." The record on appeal contains evidence that Baker's activities made Tickner afraid and made her fear for her life. Further, her son testified that these incidents caused Tickner to cry, and her brother testified that she was "emotionally scared." The jury is free to draw

reasonable inferences from the evidence and may believe or disbelieve all, part, or none of the testimony of any witness. *State v. Hineman,* 14 S.W.3d 924, 927 (Mo. banc 1999). The evidence favorable to the verdict in this case establishes that the victim suffered from "substantial emotional distress" due to the defendant's activities.

Although a close call, after viewing the facts in the light most favorable to the verdict, this court finds that the submission to the jury, and the jury verdict were supported by sufficient evidence to prove that Baker engaged in a "course of conduct" and that Ms. Tickner suffered from "substantial emotional distress," as required under § 565.225.1(3). The judgment of the trial court is affirmed.

All concur.