

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| B.L.M., | ) | No. ED109499 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Lincoln County |
| vs. | ) | 20L6-PN00384 |
| | ) | |
| D.L.O., | ) | Honorable Patrick S. Flynn |
| | ) | |
| Appellant. | ) | Filed: April 19, 2022 |

Michael E. Gardner, P.J., James M. Dowd, J., and Lisa P. Page, J.

## OPINION

Appellant D.L.O. (DLO) appeals the trial court's judgment which entered a full order of protection against her and in favor of Respondent B.L.M., pursuant to the Missouri Adult Abuse Act (MAAA), sections 455.010 to 455.085.[1] This is the second of three separate appeals arising from the same trial in which DLO was found to have stalked three people from the same household, Respondent B.L.M (Mother), her husband C.D.M. (Father), and their 27 year-old son, J.W.M. (Son).[2]

DLO asserts that there was insufficient evidence that she was guilty of stalking Mother within the meaning of section 455.020. We disagree and affirm the judgment of the trial court

---

[1] All statutory references are to RSMo 2020 unless otherwise indicated.
[2] Pursuant to section 595.226, we refer to the parties by their initials.

because there was ample evidence that DLO stalked Mother through a "course of conduct" as that phrase is defined in section 455.010(15)(b) and that DLO's course of conduct was subjectively alarming to Mother and would have been objectively alarming to a reasonable person. Moreover, since Mother resided with Son, DLO's stalking conduct which directly targeted Son but not Mother is relevant to and supports Mother's stalking claim in light of section 455.010(15)'s language that any "person who resides together in the same household with the person seeking the order of protection" may also be the victim of the stalking "when it is reasonable in that person's situation to have been alarmed by the conduct." Section 455.010(15).

## Background

Son met DLO in April 2019 through an online dating app. They had a sexual relationship that ended in June 2019. DLO is the mother to a child born in March 2020, whom she claims is Son's biological child. In spring 2020, DLO contacted Son asking for monetary support for the child. Son gave DLO money to complete a DNA test to determine paternity, but refused to give her any more money. At that point, DLO began a course of conduct directed principally against Son but which also targeted Mother and Father. In *J.W.M. v. D.L.O.*, ED109500, we held that DLO's course of conduct targeting Son constituted stalking under section 455.010(15).

A detailed account of DLO's stalking of Son is set forth in that opinion. We summarize those facts here to the extent they are pertinent to this appeal.

After Son refused DLO's demand for money, DLO began a series of threatening and violent unwanted contacts with Son from May to August 2020. These contacts included multiple threatening text messages, one of which threatened to involve DLO's father whom DLO claimed had a history of violence, and another that included sensitive personal information relating to Son, Mother, and Father, and that stated that Son was "worth more dead than alive" and "I'm not

2

making threats, I'm making promises." DLO also physically accosted Son outside the St. Charles County courthouse on July 1, 2020, after a hearing dismissing DLO's petition for an order of protection against Son, and she was found responsible for an August 5, 2020 incident in which multiple vehicles' tires were slashed outside Son, Mother, and Father's home while all three were inside.

On June 10, 2020, DLO sent Mother a direct message from her Facebook account that "[y]our address is too public to be talking any shit (along with emoji symbols). Hopefully you get caught outside. Rapist defending family."

Following the tire-slashing attack, Son, Mother, and Father each filed petitions for orders of protection against DLO and on August 7, 2020, the court entered *ex parte* orders of protection against DLO on each case. After she was served with those orders, DLO filed her own petitions requesting orders of protection against Son, Mother, and Father on behalf of herself and her son in St. Louis County.

At trial, Mother testified she felt threatened and scared for her physical safety which required her to alter her day-to-day activities, and that she believed DLO was responsible for all the events targeting her family. Moreover, Son testified he had no known enemies.

For her part, DLO denied any responsibility for the text messages or Facebook messages and claimed she was out of town during the August 5, 2020, tire-slashing event.

Neither party requested findings of fact and conclusions of law, and none were entered by the trial court. The court found DLO's testimony untruthful and entered full orders of protection against DLO in favor of Mother, Father, and Son.[3]

---

[3] DLO's appeals of the orders of protection in favor of Son and Father are the subject of separate appeals also being decided by this Court.

3

## Standard of Review

Appeals from court-tried civil cases are governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32. We view "the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." *Bateman v. Platte Cty.*, 363 S.W.3d 39, 43 (Mo. banc 2012). We defer to the trial court's determinations of credibility. *Schwalm v. Schwalm*, 217 S.W.3d 335, 336 (Mo. App. E.D. 2007). "Because the trial judge is in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded." *Wallace v. Van Pelt*, 969 S.W.2d 380, 383 (Mo. App. W.D. 1998); *Parkhurst v. Parkhurst*, 793 S.W.2d 634, 637 (Mo. App. E.D. 1990).

Finally, due to the "potential stigma that may attach to an individual who is labeled a 'stalker' under the Missouri Adult Abuse Act, trial courts must exercise great care ... to ensure sufficient evidence exists to support all elements of the statute before entering a full order of protection." *M.L.G. v. R.W.*, 406 S.W.3d 115, 117 (Mo. App. E.D. 2013).

## Discussion

DLO's sole point on appeal contends that the trial court erred in granting a full order of protection based on stalking because there was insufficient evidence that DLO purposely engaged in an unwanted course of conduct that caused Mother to reasonably fear physical harm. We disagree and find the record amply supports that DLO's conduct directed specifically to Mother constituted stalking under the MAAA. Additionally, Mother's status as a "person who

4

resides in the same household" with Son, who was DLO's principal stalking target, provides further evidentiary support for the trial court's conclusion that DLO stalked Mother.

The MAAA provides that "[a]ny person who has been subject to domestic violence by a present or former family or household member, or who has been the victim of stalking or sexual assault, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such domestic violence, stalking, or sexual assault by the respondent." Section 455.020(1). Section 455.010(15) defines stalking to be when "any person purposely engages in an unwanted course of conduct that causes alarm to another person, *or a person who resides together in the same household with the person seeking the order of protection when it is reasonable in that person's situation to have been alarmed by the conduct*." Section 455.010(15) (emphasis added).

Thus, in the context of Mother's case, this provision contemplates two sources of proof relevant to whether Mother was stalked by DLO under the Act - (1) the evidence that she was DLO's direct victim or target, and (2) evidence that she was DLO's indirect victim given that Mother resided with Son who was DLO's more extensive direct victim and target and who also sought an order of protection himself.

A "course of conduct" under the MAAA is a "pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose." Section 455.010(15)(b). That section provides examples of actions that constitute an unwanted course of conduct whether done directly, indirectly, or through a third party. Those include following, threatening, contacting, or communicating to a person by any action, method, or device. Section 455.010(15)(b). Additionally, an activity serves no legitimate purpose when it is unlawful, not allowed, or not sanctioned by law or custom. *N.C. v. Y.Q.L.*, 609 S.W.3d 56, 60 (Mo. App. E.D. 2020).

5

To "alarm" someone for purposes of the MAAA means to "cause fear of danger of physical harm." Section 455.010(15)(a). Alarm contains both a subjective and objective component, and the record must contain sufficient evidence showing both that the victim had subjective fear of physical harm, and that a reasonable person under the same circumstances would have feared physical harm. *E.D.H. v. T.J.*, 559 S.W.3d 60, 64 (Mo. App. E.D. 2018).

Turning now to the circumstances of this case, we conclude that the record supports the trial court's conclusion that DLO stalked Mother. That record consists of DLO's stalking conduct that was directed specifically at Mother as well as the evidence of DLO's stalking conduct directed at Son since Mother and Son reside together. In both regards, DLO engaged in a course of conduct with no legitimate purpose that caused subjective and objective alarm to Mother, and it was reasonable for Mother to be alarmed by the situation. While no findings of fact or conclusions of law were requested or entered, we presume that the trial court made findings in accordance with the decree entered and we may affirm the judgment under any reasonable theory supported by the evidence. *Uelk v. Directory Distribg. Associates, Inc.*, 803 S.W.2d 632, 634 (Mo. App. E.D. 1991).

Our companion opinion in *J.W.M. v. D.L.O.*, ED109500, affirmed the trial court's judgment that DLO stalked Son. Much of DLO's course of conduct targeting Son that is set forth in that opinion, which we summarize here, also indirectly targeted Mother. DLO was responsible for the May 26, 2020 text message that threatened to involve DLO's father, who she claimed had a history of violence, as well as the July 1, 2020 text message that included personal information relating to Son, Mother, and Father and stated that Son was "worth more dead than alive." Furthermore, DLO was involved in the August 5, 2020 tire-slashing attack and

6

physically accosted Son outside the St. Charles County courthouse. We found all these facts demonstrate a course of conduct within the meaning of the MAAA's stalking definition.

The record establishes that DLO's course of conduct also *directly* targeted Mother when on June 10, 2020, through a social media message from DLO's account, she stated that Mother's address was "too public" and she hoped Mother would "get caught outside." In light of this record, we conclude that the court correctly found that DLO stalked Mother within the meaning of the statute, as these events show a course of conduct that occurred and escalated over time sufficient to support a finding of stalking under the statute. *See K.M.C. v. M.W.M.*, 518 S.W.3d 273, 279 (Mo. App. E.D. 2017) (finding that escalating events of repeatedly following and approaching a person with no legitimate purpose constitutes stalking).

Moreover, we conclude that DLO's conduct had no legitimate purpose. Her conduct was threatening and violent and readily crosses the threshold between normal social interactions and stalking, at which point the conduct no longer has a legitimate purpose. *See N.C.*, 609 S.W.3d at 60 (finding that purposeful and unwanted contacts, although not illegal, blew past the threshold at which point alarming conduct no longer had a legitimate purpose).

Next, we find that Mother was subjectively alarmed by DLO's conduct. We note that under section 455.010, it is the entire course of conduct – not each individual act in isolation – that must reasonably alarm the petitioner. *Vinson v. Adams*, 188 S.W.3d 461, 465 (Mo. App. E.D. 2006). In light of the record outlined above, Mother credibly testified that she feared her home might be attacked or shot at by someone trying to target Son. Furthermore, Mother also testified that she has suffered from sleep deprivation and had to consult with a neurologist regarding her stress from the events. We find, therefore, that the record demonstrates that Mother was subjectively fearful of physical harm because DLO's course of conduct created more

7

uneasiness, nervousness, unhappiness, or the like for Mother than what is commonly experienced in day-to-day living. *K.M.C.*, 518 S.W.3d at 279; *Wallace*, 969 S.W.2d at 386.

Likewise, we conclude that DLO's threats to Mother and her household would have been objectively alarming to a reasonable person because they were repeated and escalated in nature from written threats to physical destruction of property and threats of physical violence. It is objectively reasonable to conclude that such conduct could have escalated further to physical harm. *See N.C.*, 609 S.W.3d at 61 (finding reasonable alarm from persistent and increasingly unreasonable nature of the contacts). We also find pursuant to section 455.010(15), that it was "reasonable in [Mother's] situation to have been alarmed by [DLO's] conduct[]" that she directed toward Son.

We now turn to DLO's claims that her conduct constituted merely irritating and unpleasant contacts that were insufficient to constitute a "course of conduct" under the MAAA. In light of our foregoing discussion, we find this unpersuasive.

We are also unpersuaded by DLO's claims of innocence with regard to a number of the events at issue including some of the threatening messages and the tire-slashing event. The trial court found DLO's testimony to be unconvincing and untruthful. And the trial court, in a stalking action under the MAAA, is in the best position to gauge the credibility of witnesses and to determine whether a given respondent appears capable of the feared violence. *Vinson*, 188 S.W.3d at 465. As such, the trial court was not required to accept any of DLO's testimony. *S.A. v. Miller*, 248 S.W.3d 96, 100–01 (Mo. App. W.D. 2008).

We therefore conclude that the record supports the finding that DLO engaged in a course of conduct that constituted stalking under the MAAA which warrants a full order of protection.

8

## Conclusion

For the reasons stated above, we affirm the trial court's judgment.

_____
James M. Dowd, Judge

Michael E. Gardner, P.J., and
Lisa P. Page, J., concur.