

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| L.A.C., | ) | No. ED110930 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Cape Girardeau County |
| vs. | ) | |
| | ) | Honorable Julia M. Koester |
| R.A.P., | ) | |
| | ) | |
| Appellant. | ) | Filed: June 27, 2023 |

## I.      Introduction

R.A.P. ("Appellant") appeals from the judgment of the full order of protection entered against him by the Circuit Court of Cape Girardeau County on August 16, 2022, whereby he was prohibited under the Adult Abuse Act, §§ 455.010-455.095[1] (the "Act"), from, *inter alia*, stalking, harassing, threatening, or otherwise contacting L.A.C. ("Respondent") for a period of one year.  In his sole point on appeal, Appellant contends the circuit court erred in entering a full order of protection against him because the evidence was insufficient to establish that his actions constituted domestic violence or stalking, as required under the Act.  We affirm.

## II.      Factual and Procedural Background

On June 24, 2022, Respondent filed her petition seeking a full order of protection against Appellant pursuant to the Act (the "Petition").  The circuit court entered an *ex parte* order of

---

[1] All statutory references are to RSMo (2016).

protection against Appellant the same day, and scheduled the matter for a hearing on whether to enter a full order of protection. On August 16, 2022, the circuit court held a hearing at which Respondent and five witnesses testified on her behalf. Appellant also testified at the hearing. Respondent testified that she and Appellant had a "romantic relationship" from July 9, 2021, to April 1, 2022, which ended with an altercation during which Appellant said several things that hurt her feelings, he became "physical" with her, he started packing up their belongings into garbage bags and hauling them outside, and he threw a "fit." Following that altercation, Appellant left Respondent's house and they did not see each other for several weeks.

Respondent also testified about numerous acts of unwelcome communication and harassment committed by Appellant several weeks after their breakup, which caused her to become "terrified" of Appellant and live in constant fear for her personal safety and that of her two pet dogs. The first noteworthy incident occurred on May 28, 2022, which was the first time they saw each other since breaking up on April 1. Although they had an uneventful dinner together, Respondent testified that when she told Appellant later that night that their relationship was over, he "lost his mind" because she would not let him come into her house or spend the night; Respondent also testified that he "went crazy." Respondent blocked Appellant's number on her cellular phone the next day. However, Respondent testified that she still received several calls from Appellant using unknown phone numbers, despite her requests that he stop contacting her.

The second noteworthy incident occurred on June 14, 2022, when Appellant showed up unannounced at Respondent's house while she was recovering from ankle surgery. When Respondent refused to let Appellant into her house, he became agitated and attempted to physically force his way through the front door, placing his hand on her shoulder and screaming

2

profanities at her. Despite being on crutches, Respondent managed to prevent Appellant from entering her house and he left, but the incident left her extremely upset and shaken. Respondent's boyfriend at the time was at her house when the incident occurred, but he remained in the kitchen at Respondent's request in order to avoid a potential physical confrontation with Appellant.

The third noteworthy incident occurred on June 16, 2022, when Appellant again showed up at Respondent's house unannounced, but this time she was alone. After initially not answering the door because she was attempting to take a shower, Respondent eventually opened the front door to find Appellant hiding behind a car. Appellant then came into Respondent's front yard and began "screaming" at her. Respondent testified that Appellant said a fire would start in her back yard, that she "will not see it coming," and that the fire will burn her house down with Respondent and her pet dogs in it. This incident again left Respondent upset and shaken, prompting her to call the police and report Appellant's actions.

Respondent also testified that ever since the circuit court entered the *ex parte* order of protection on June 24, Appellant had not contacted her or visited her house; therefore, she believed the order of protection was working and requested a full order of protection, which she believed was the only way he would stop. In addition to Respondent's own testimony, five witnesses testified on her behalf, including both of her parents, her then-current boyfriend, and two friends. All witnesses corroborated Respondent's testimony, which included testimony that they believed Respondent was "terrified" of Appellant and that a full order of protection would be appropriate. Appellant also testified at the hearing, denying most of Respondent's allegations.

At the conclusion of the hearing, the circuit court entered a full order of protection against Appellant pursuant to § 455.040, finding that Respondent had "proven allegations of

3

domestic violence, stalking, and/or sexual assault against [Appellant]." Therefore, the circuit court ordered Appellant not to stalk, harass, use or threaten to use physical force, communicate, commit or threaten to commit domestic violence, molest, sexually assault, disturb the peace, or abuse or threaten to abuse Respondent's pets (the "Order of Protection"). The Order of Protection expires on August 15, 2023. This appeal follows.

### III. Standard of Review

As in any court-tried case, "we will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *McGrath v. Bowen*, 192 S.W.3d 515, 517 (Mo. App. E.D. 2006) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *Wallace v. Van Pelt*, 969 S.W.2d 380, 382 (Mo. App. W.D. 1998). "We defer to the trial court's determinations relating to credibility and consider only those facts and inferences supporting the judgment." *Id*. at 383. Furthermore, "[b]ecause the trial judge is in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded." *Id*.

In reviewing the circuit court's decision in this case, we also remain cognizant that "real harm" can result in overuse of the Act, "including the stigma that may attach to a respondent who is ultimately labeled a 'stalker,'" and thus, "trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection." *McGrath*, 192 S.W.3d at 517 (citing *Overstreet v. Kixmiller*, 120 S.W.3d 257, 259 (Mo. App. E.D. 2003)); *accord Schwalm v. Schwalm*, 217 S.W.3d 335, 337 (Mo. App. E.D. 2007) ("Courts must take great care to ensure the existence of sufficient evidence to support all elements of the Adult Abuse Act before entering a full order of protection."). We also recognize

that the Act "is not, nor was it intended to be, 'a solution for minor arguments between adults.'" *Dennis v. Henley*, 314 S.W.3d 786, 790 (Mo. App. S.D. 2010) (quoting *Binggeli v. Hammond*, 300 S.W.3d 621, 624 (Mo. App. W.D. 2010)).

Finally, we note that a petitioner must prove allegations in a petition for an order of protection by a preponderance of the evidence in order to be entitled to any relief under the Act. § 455.040.1(1); *Schwalm*, 217 S.W.3d at 337.

## IV. Discussion

In his sole point on appeal, Appellant contends that "the evidence was insufficient" to support the circuit court's entry of the Order of Protection. While Appellant does not state which ground under *Murphy* he contests, he quotes the definition of substantial evidence; therefore, we analyze this appeal as under the first prong of *Murphy*—whether the Order of Protection was supported by substantial evidence.

Appellant generally does not dispute the occurrence of the incidents Respondent described at the hearing, but he attempts to minimize their severity and emotional impact on Respondent. In doing so, Appellant contends Respondent's evidence regarding these incidents does not meet the statutory requirements for "domestic violence" as defined in § 455.010(5), "harassment" as defined in § 455.010(1)(e), and "stalking" as defined in § 455.010(15).

With respect to the term "domestic violence" as defined in § 455.010(5), Appellant discusses three of the incidents raised at the hearing. First, regarding the incident on April 1, 2022, Appellant does not dispute Respondent's testimony that he got "physical" with her, threw a "fit," and pushed her down. Second, regarding the incident on June 14, 2022, Appellant does not dispute Respondent's testimony that he showed up at her house, placed his hand on her shoulder, and tried pushing his way into her house. Third, regarding the incident on June 16,

5

2022, Appellant does not dispute Respondent's testimony that she called the police after he rang her door bell, hid behind a car, and screamed that he was going to burn her house down with her and her dogs in it. Rather, in response to these incidents, Appellant simply argues that Respondent never mentioned that she was "physically harmed," which he argues is an essential element of battery. While "purposely and knowingly causing physical harm" is an element of "battery" under the Act, *see* § 455.010(1)(c), battery is not the only basis upon which a circuit court may enter a full order of protection.

"Any person who has been subject to **domestic violence** by a present or former family member or household member, *or* who has been the victim of **stalking** or sexual assault, may seek relief under [the Act]" (emphasis added). § 455.020.1; *G.E.G. v. Gauert*, 620 S.W.3d 676, 678 (Mo. App. W.D. 2021). The Act defines the term "household member" to include "any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim." § 455.010(7).

In this case, the circuit court expressly found that Respondent's relationship with Appellant was a "[r]omantic/intimate social relationship," and Appellant concedes this finding in his brief. We agree that the record supports this finding. Therefore, in addition to seeking relief under the Act as a victim of "stalking," Respondent could also seek relief as someone who has been subject to "domestic violence" by a "household member."

The Act defines the term "domestic violence" as "abuse or stalking committed by a family or household member, as such terms are defined in this section." § 455.010(5). The Act defines the term "abuse" to include, but is not limited to the following:

> [T]he occurrence of any of the following acts, attempts or threats
> against a person who may be protected pursuant to this chapter…:
> (a) "**Abusing a pet**", purposely or knowingly causing,
> attempting to cause, or threatening to cause physical injury to a pet

6

with the intent to control, punish, intimidate, or distress the petitioner;

       (b) **<u>Assault</u>**, purposely or knowingly placing or attempting to place another in fear of physical harm;

       (c) "**Battery**", purposely or knowingly causing physical harm to another with or without a deadly weapon;

       (d) "**Coercion**", compelling another by force or threat of force to engage in conduct from which the latter has a right to abstain or to abstain from conduct in which the person has a right to engage;

       (e) **<u>Harassment</u>**, engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult or child and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult or child to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner or child. Such conduct might include, but is not limited to:

          a. Following another about in a public place or places;
          b. Peering in the window or lingering outside the residence of another; but does not include constitutionally protected activity[.]

       …

§ 455.010(1) (underlined emphasis added).

The Act defines the term "stalking" to include "when any person purposely engages in an unwanted course of conduct that causes alarm to another person." § 455.010(15). For purposes of the definition of "stalking," the term "alarm" means "to cause fear of danger of physical harm," and the term "course of conduct" means "two or more acts that serve no legitimate purpose," and can include monitoring, observing, surveilling, threatening, or communicating to a person by any action, method, or device. *Id*.

In this case, the record clearly contains substantial evidence that Appellant's conduct constituted "domestic violence" under the definition of "abuse" in § 455.010(1). Specifically, the record contains substantial evidence that Appellant's conduct constituted "assault" in that he purposely or knowingly placed or attempted to place Respondent "in fear of physical harm."

7

§ 455.010(1)(b). Therefore, the circuit court certainly could have found that Appellant assaulted Respondent on June 14, 2022, when he placed his hand on her shoulder when attempting to push his way through the front door of her home. Likewise, the circuit court certainly could have found that Appellant assaulted Respondent on June 16, 2022, when he stood in front of her house and threatened to burn her house down with her and her dogs in it. In his brief, Appellant suggests that he did not assault Respondent because she did not specifically testify that "she was in fear of physical harm." However, Appellant conveniently ignores Respondent's repeated testimony that she was "terrified" of Appellant, as well as the corroborating testimony of her family and friends to that effect. In addition, the fact that Respondent called the police following the incident on June 16, 2022, further supports an inference that she feared physical harm at the hands of Appellant. Appellant also conveniently ignores Respondent's testimony that shortly before filing her Petition on June 24, 2022, she spent several days with a friend who lived in Kentucky because she "couldn't feel safe at home." These are just three specific examples, but the record contains additional evidence that supports a finding that Respondent was living in fear of physical harm by Appellant due to these incidents.

With respect to the term "harassment" as defined in 455.010(1)(e), Appellant notes that Respondent was required to prove that his actions "would cause a reasonable adult … to suffer substantial emotional distress and must actually cause substantial emotional distress." Appellant further notes that "substantial emotional distress" means "the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living," and cites *Wallace v. Van Pelt*, 969 S.W.2d at 386. While we agree that this is the general standard for establishing "harassment" under the Act, we

8

again disagree that the record does not contain substantial evidence to satisfy this standard. The evidence supporting a finding that Appellant's actions placed Respondent in fear of physical harm under the definition of "domestic violence" also supports a finding that Respondent suffered "substantial emotional distress."

Finally, with respect to the term "stalking" as defined in § 455.010(15), Appellant notes that proof of "alarm" requires both a subjective and objective component, and cites *Skovira v. Talley*, 369 S.W.3d 780, 784 (Mo. App. S.D. 2012).[2] Appellant further notes that the objective component of proof of "alarm" requires a showing that "a reasonable person in the situation would fear the danger of physical harm," but provides no citation. While we agree that this is the general standard for establishing "stalking" under the Act, we again disagree that the record does not contain substantial evidence to satisfy this standard. Again, the evidence supporting the circuit court's finding that Appellant's actions placed Respondent in fear of physical harm under the definition of "domestic violence" also supports a finding that Respondent suffered "alarm," both subjectively and objectively, satisfying the definition of "stalking."

The evidence adduced in this case provides textbook examples of "domestic violence" and "stalking" within the meaning of the Act, and clearly meets the substantial evidence standard. *McGrath*, 192 S.W.3d at 517. Furthermore, we defer to the circuit court's assessment of the witnesses' credibility and will not supersede the discretion of the circuit court in entering the Order of Protection against Appellant based on this record. *Wallace*, 969 S.W.2d at 383.

Point denied.

---

[2] In his brief, Appellant references § 455.010(10)(a) for the definition of "alarm" (as used in defining the term "stalking"), which was the correct citation under the version of the Act in effect from August 28, 2009, to August 27, 2011. However, the correct citation under the current version of the Act is § 455.010(15)(a).

## V. Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed.

_____
Kelly C. Broniec, Presiding Judge

Philip M. Hess, J. and
James M. Dowd, J. concur.

10