*459
 
 NANCY STEFFEN RAHMEYER, Judge.
 

 Ray Steger (“Appellant”) appeals from a judgment granting a full order of protection, brought pursuant to the Adult Abuse Act, sections 455.010 through 455.085,
 
 [1]
 
 by Kristina Towell (“Respondent”). Appellant claims the judgment is not supported by substantial evidence.
 
 [2]
 
 We agree and reverse.
 

 Section 455.020 provides relief for (1) any adult who has been subject to abuse by a present or former adult family or household member, or (2) any adult who has been a victim of stalking. It is undisputed that Respondent and Appellant were never family or household members as defined by section 455.010(5).
 
 [3]
 
 Therefore, the action was brought pursuant to the “stalking” provision of the act.
 

 ‘Stalking’ is when an adult purposely and repeatedly harasses or follows with the intent of harassing another adult.
 
 [4]
 
 As used in this subdivision, ‘harasses’ means to engage in a course of conduct directed at a specific adult that serves no legitimate purpose, that would cause a reasonable adult to suffer substantial emotional distress. As used in this subdivision, ‘course of conduct’ means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of ‘course of conduct.’
 

 Section 455.010(10).
 

 Harassment is established when the evidence reveals that the alleged harasser has engaged in a course of conduct that is directed at the alleged victim, serves no legitimate purpose, and would cause a reasonable person to suffer substantial emotional distress. The course of conduct that must be established is a series of acts, over a period of time (no matter how short), that demonstrate a continuity of purpose.
 
 Wallace v. Van Pelt,
 
 969 S.W.2d 380, 384 (Mo.App. W.D.1998). Substantial emotional distress has been defined as conduct that brings about a significantly higher level of emotional distress than is routinely experienced in daily life, but which is not so severe that the average person finds it unendurable.
 
 Leaverton v. Lasica,
 
 101 S.W.3d 908, 911
 
 *460
 
 (Mo.App. S.D.2003). Conduct that merely causes alarm or distress to the victim does not qualify as harassment if it would not cause substantial emotional distress to a reasonable person.
 
 Id.
 

 Unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law, we will sustain the trial court’s order.
 
 Id.
 
 at 910-11. Substantial evidence has been defined as competent evidence from which the trier of fact could reasonably decide the case.
 
 Wallace,
 
 969 S.W.2d at 382. Although the order of protection is not pursuant to any criminal statute, a violation of the order of protection is a criminal violation.
 
 See
 
 section 455.085. It is, of course, Respondent’s burden to produce credible evidence to support her allegations.
 
 [5]
 
 Trial courts must exercise great care to make certain that sufficient evidence exists to support all elements of the statute before entering a full order of protection.
 
 Overstreet v. Kixmiller,
 
 120 S.W.3d 257, 259 (Mo.App. E.D.2003). We find that Respondent failed to provide any evidence at all of fear of substantial emotional distress and failed to produce substantial, credible evidence that Appellant purposely and repeatedly harassed or followed her with no legitimate purpose.
 

 We now set out the relevant contacts between Appellant and Respondent. Appellant did not testify; the evidence came in by way of the court questioning Respondent and through cross-examination. Respondent testified that approximately a year or more prior to the request for an order of protection, Appellant came into the store where Respondent was working and would “continuously flirt with [her] really bad” and “grab [her] on the butt.”
 
 [6]
 
 Respondent claimed Appellant would tell her “how redheads are great lovers” and it just “creeped” her out. Clearly, nothing in these allegations comes close to the “stalking” definition, nor indicates any substantial emotional distress.
 

 Appellant and Respondent had no contact for three months because Respondent moved to the State of Georgia. Upon her return, she saw Appellant when he came into her work place and said, “Oh, I seen you. I figured I’d stop in.” Respondent thought nothing of the meeting. In fact, later that same day, Appellant waved her down on a public street and told her he wanted her to come to his house for a drink and he would be a “perfect gentleman.” She responded, “Sorry, I’m married.” The conversation continued with Appellant requesting information about buying the maple syrup that Respondent sold. Respondent, claiming she treated him just like a customer, like everyone in town, borrowed a pen from Appellant and showed him her prized pet dog. She directed Appellant to the person she thought had the maple syrup and Appellant went to that business owner to purchase the syrup. Again, nothing in these conversations comes close to any definition of stalking or a claim of substantial emotional distress.
 

 The final allegation of Respondent is that Appellant has been on the county road that leads to her driveway. Her testimony indicated that she frequented
 
 *461
 
 the variety store where she used to work, Ross’s Minit Mart, where Appellant “goes in there and gets alcohol all the time.” When Respondent visited the store, she would be told by workers that Appellant had just been there. Sometimes, when she drove home, Appellant would be “sitting down there by [her] drive” or before her driveway. Respondent also claimed she was told that Appellant was on that road during the daytime. Respondent admitted that she lives a quarter of a mile off the county road and that Appellant has never been up the driveway to her house. On one evening, Respondent, while driving home at night, came upon Appellant, who had pulled over, away from a low-water bridge; Respondent “flew past” Appellant, who did not follow her. He never made any threats to her and she never told him to leave her alone or that she found his behavior offensive. There was absolutely no testimony that Respondent suffered emotional distress, much less substantial emotional distress, over the incidents of seeing Appellant on the public roadway.
 
 [7]
 

 We are troubled by the trial court’s finding that the evidence in this case meets the definition of a course of conduct that serves “no legitimate purpose.” To find a “course of conduct” to have no legitimate purpose, we must find that the actions were not sanctioned by law or custom, were not lawful, or allowed.
 
 Wallace,
 
 969 S.W.2d at 385. The Full Order of Protection ordered Appellant not to abuse, threaten to abuse, molest, stalk or disturb the peace of Respondent wherever Respondent may be found and specifically named Ross’s Minit Mart. There is no evidence of any stalking, harassment or abuse at Ross’s Minit Mart and yet Appellant is banned by this order from frequenting his “regular” commercial establishment lest he encounter Respondent. It is unclear from the evidence where Appellant lives, but there does appear to be some evidence in an exhibit that Appellant may live off the county road where he had been seen driving. The mere traveling on a county road, under the facts of this case, does not supply a course of conduct that serves no legitimate purpose.
 
 [8]
 

 We are mindful that although the Adult Abuse Act does not itself impose criminal penalties, there are serious consequences to orders of protection being
 
 entered.
 
 Under the Federal Gun Control Act, 18 U.S.C. 922(g)(8), a person under an order of protection may not possess a firearm, even for recreational purposes. Therefore, Appellant may violate federal laws if he possesses hunting weapons or legitimately hunts. The mere possession of firearms while under an order of protection violates 18 U.S.C. 922(g)(8).
 
 U.S. v. Lippman,
 
 369 F.3d 1039 (8th Cir.2004). The penalty provisions do not require knowledge of the law nor intent to violate it.
 
 Id.
 
 at 1043. Another consequence to the entry of an order of protection is that persons in the military or law enforcement, who become subject to an order of protection, may lose their livelihood. Furthermore, the real and significant harm from the abuse of the stalking provision of the
 
 *462
 
 Adult Abuse Act is the stigma that attaches by virtue of a person found to be a stalker.
 
 Wallace,
 
 969 S.W.2d at 387;
 
 see also Overstreet v. Kixmiller,
 
 120 S.W.3d 257, 259 (Mo.App.E.D.2003). In fact, a background search is now conducted on any foster parent applicant, including all persons in their household over the age of seventeen, for evidence of full orders of protection.
 
 See
 
 section 210.487.
 

 Thus, trial courts must balance the dire, quasi-criminal consequences to the accused with the laudatory purpose of preventing potential violence and unnecessary and unjustified infliction of emotional distress.
 
 See Wallace,
 
 969 S.W.2d at 387. Stalking statutes should be construed narrowly enough to prevent serious abuse, but broadly enough to maximize victim protection.
 
 Id.
 

 We find the order granting a full order of protection is not supported by substantial evidence and is, therefore, reversed. The cause is remanded to the trial court with instructions to vacate the full order of protection.
 

 GARRISON, P.J., and PREWITT, J., concur.
 

 [1]
 

 . All references to statutes are to RSMo 2000, unless otherwise indicated.
 

 [2]
 

 . Appellant also notes that there was an error on the Full Order of Protection granted by the court in that the judgment was signed on July 2, 2004, and yet was effective until July 1, 2004. Appellant acknowledges this to be a "scrivener's error” and seeks a resolution only on the merits of the grant of the full Order of Protection.
 

 [3]
 

 . "Family” or “household member” includes spouses, former spouses, adults related by blood or marriage, adults who are presently residing together or have resided together in the past, an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the victim, and adults who have a child in common regardless of whether they have been married or have resided together at any time.
 

 [4]
 

 .In 2004, the legislature changed the definition of stalking to "when an adult purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person’s situation to have been alarmed by the conduct.” Section 455.010(10) RSMo 2004. The course of conduct is further defined as a "pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact.” Furthermore, "repeated” means two or more incidents evidencing a continuity of purpose and “alarm” means to cause fear of danger of physical harm. The legislation was effective August 28, 2004; however, the order that is the subject of this appeal occurred on July 2, 2004.
 

 [5]
 

 .
 
 See Wallace, 969
 
 S.W.2d at 387 (trial court must exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act to make sure sufficient credible evidence exists to support all elements of the statute).
 

 [6]
 

 . The testimony is not clear whether Appellant tried to grab Respondent on the butt or actually did so. Respondent's Petition claimed Appellant had "tried to grab [her] butt” and at one point in the hearing she also testified, "he doesn't need to be trying to grab me on the butt.” For the purpose of our analysis, we will assume Appellant actually did so.
 

 [7]
 

 . Although not in effect at the time of this order, we are persuaded of the legislature's recent amendment that any actionable harm be substantial harm in that the course of conduct must cause alarm which is defined as "fear of danger of physical harm.” Section 455.010(10)(c) RSMo 2004.
 

 [8]
 

 . We do not ignore the testimony of Respondent that, after the petition for the order of protection was filed, Respondent’s husband and Appellant may have had a physical altercation involving the use of weapons; however, Respondent was not present to witness the altercation and the altercation does not come within a complaint that Respondent was stalked. There are certainly readily available criminal laws if Appellant is at fault for a physical confrontation with Respondent’s husband.