v.

**William WOLFE, Appellant.**

No. WD 70695.

Missouri Court of Appeals,
Western District.

Dec. 15, 2009.

Victor B. Peters, Kansas City, MO, for appellant.

Christopher Hittner, pro se, for respondent.

Before Division Three: MARK PFEIFFER, Presiding Judge, KAREN KING MITCHELL, Judge and CYNTHIA L. MARTIN, Judge.

Cynthia L. Martin, Judge.

William Wolfe appeals from the trial court's judgment granting a full order of

protection, following the filing of a petition for protection by C.H., pursuant to the Adult Abuse Act, sections 455.010 through 455.085, RSMo 2000. Wolfe claims the judgment is not supported by substantial evidence. We agree and reverse.

## Factual and Procedural History

Wolfe and C.H. are neighbors in the same cul-de-sac located in Platte County. C.H.'s house is at the entrance to the cul-de-sac. Wolfe and C.H. are both adult men. Both are over six feet tall and weigh more than two hundred pounds. Wolfe is employed as a Clay County deputy sheriff.

On July 8, 2008, C.H. was walking his dog when he saw Wolfe's dog and a neighbor's German shepherd running loose in the cul-de-sac. C.H. was "charged and jumped on" by the two dogs. C.H. returned his dog to his residence and then walked into the cul-de-sac. When C.H. approached the home of the owner of the German shepherd, the German shepherd bit him on the arm. C.H. rang that neighbor's door bell but no one answered.

Wolfe approached and explained that he was supposed to be watching the neighbor's dog and asked what had happened. C.H. told him that he had been bitten by the German shepherd and charged by Wolfe's dog. When Wolfe stated, "that's not a bite," C.H. told Wolfe he was going to call animal control because Wolfe "obviously [didn't] care about these dogs running loose." Wolfe told him not to bother animal control because "they have better things to do with their time." C.H. subsequently filed a complaint with animal control.

On November 2, 2008, while C.H. was raking leaves in his yard, Wolfe stood in his own driveway and watched C.H. for ten minutes. On December 24, 2008, C.H. saw Wolfe's dog loose and took a picture. Wolfe put his dog inside his home and watched C.H.'s home from across the street for ten minutes. On January 1 and January 4, 2009, C.H. saw Wolfe's dog off its leash. On January 4, 2009, Wolfe watched C.H.'s home for less than a minute.

A court hearing regarding the animal control complaint was held on January 15, 2009. The hearing resulted in a $75 fine for Wolfe for public nuisance and a $105 fine for C.H. for failing to license his dog.

After the parties returned home from the hearing, Wolfe was talking with a neighbor in the neighbor's yard when C.H. came out of his home. Wolfe yelled at C.H. that his $75 fine was no big deal because C.H. had to pay $105. Wolfe went on to verbally berate C.H.'s manhood. C.H. recorded the statements.

On January 15, 2009, C.H. applied for an ex parte order of protection, using a pre-printed Adult Abuse/Stalking Petition for Order of Protection form. In response to Question 8, which asked C.H. to check applicable boxes, C.H. alleged that Wolfe knowingly and intelligently "stalked me" and "harassed me" by the following act(s):

| | |
|---|---|
| 11:02 a.m. Dec. 24, 2008 | Mr. Wolfe lets his dog off leash, stares in our window for 10 minutes. |
| 11:58 a.m. Jan. 4, 2009 | Mr. Wolfe lets his dog off leash, stares in window for thirty seconds. |
| 4:05 p.m. Jan. 15, 2009 | Mr. Wolfe verbally harasses me while I get the mail, dog off leash. |

C.H. did not check the available boxes for "caused or attempted to cause me physical harm" or for "placed or attempted to place me in apprehension of immediate physical harm."

In response to Question 9 on the pre-printed form, which states: "I am afraid of [Wolfe], and there is an immediate and present danger of abuse or stalking of me because: (describe)," C.H. wrote: "He has been staring in our windows and verbally harassing myself and my wife." C.H. attached a two page narrative to his petition,

which describes several incidents of verbal harassment by Wolfe of C.H. and of C.H.'s wife, all involving, in one respect or another, the parties' dogs. C.H. also complained in the narrative that Wolfe had been verbally abusive in the courtroom at the conclusion of the hearing on the animal control complaint and that Wolfe was parking a beat up truck on the street in front of C.H.'s house.

An ex parte order of protection was issued by the trial court on January 15, 2009. The ex parte order was served on Wolfe on January 17, 2009. The ex parte order advised that a hearing would be conducted on January 27, 2009.

After the ex parte order of protection was issued, Wolfe continued parking his pickup truck in the cul-de-sac in front of C.H.'s home. C.H. called traffic control to report an abandoned vehicle. When traffic control reported to the scene, Wolfe told the officer that it was his truck, properly licensed and not abandoned. No action was taken against Wolfe for parking on the street.

At the January 27, 2009 hearing to consider a full order of protection, C.H. testified to the above incidents. Wolfe testified that he walks his dog on the sidewalk and has never walked his dog on the side of the street where C.H. lives. Wolfe testified that he has never been on C.H.'s property. C.H. admitted on cross examination that Wolfe could not walk his dog without going past C.H.'s house. Wolfe presented the testimony of the neighbor who had witnessed the January 15, 2009 confrontation. That neighbor testified that Wolfe made no attempt to approach C.H.

On January 27, 2009, the trial court entered judgment granting a full order of protection. The preprinted form order notes that the trial court found that "pursuant to Section 455.040 RSMo that [C.H.] has proved the allegations of abuse or stalking." The full order of protection is effective until January 27, 2010, unless sooner terminated or renewed. This appeal followed.

## Standard of Review

Wolfe's sole claim on appeal is that the trial court's full order of protection was not supported by the preponderance of the evidence. In reviewing full orders of protection, " '[t]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.' " *Beckers v. Seck*, 14 S.W.3d 139, 142 (Mo.App. W.D.2000)(quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *Wallace v. Van Pelt*, 969 S.W.2d 380, 382 (Mo.App. W.D.1998). "Because the trial judge is in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded." *Id.* at 383.

## Analysis

■ The Adult Abuse Act, section 455.020.1 provides that: "Any adult who has been subject to abuse by a present or former adult family or household member, or who has been the victim of stalking, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such abuse or stalking by the respondent." Wolfe is not a present or former adult family or household member of C.H.'s. Thus, C.H.'s only potential recourse against Wolfe under section 455.020.1 was for stalking.

"Stalking" occurs "when an adult purposefully and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct." Section 455.010(10). A "course of conduct" is "a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted conduct." Section 455.010(10)(a). "Repeated" means "two or more incidents evidencing a continuity of purpose." Section 455.010(10)(b). "Alarm" is defined as "caus[ing] fear of danger of physical harm." Section 455.010(10)(c). The petitioner bears the burden to prove the allegation of stalking by a preponderance of the evidence. Section 455.040.1.

An order of protection is not entered pursuant to any criminal statute. *Towell v. Steger,* 154 S.W.3d 471, 474 (Mo. App. S.D.2005). However, a full order of protection has criminal implications. Violation of a full order of protection is a criminal offense. *Id.* Full orders of protection can, upon motion of the petitioner, and after a hearing by the trial court, be renewed for up to an additional year. To that end, trial courts have been cautioned to "exercise great care to make certain that sufficient evidence exists to support all elements of the statute before entering a full order of protection." *Id.* This court has warned: "The potential for abuse of the stalking provision of the Adult Abuse Act is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having been found to be a stalker." *Wallace,* 969 S.W.2d at 387. Beyond stigma, a full order of protection may have far reaching consequences for Wolfe.

The Federal Gun Control Act, 18 U.S.C. 922(g)(8), prohibits a person under an order of protection from possessing a firearm, even for recreational purposes. *Towell,* 154 S.W.3d at 475. Thus, "persons in the military or law enforcement, who become subject to an order of protection, may lose their livelihood." *Id.* Wolfe is a deputy sheriff. Though the record does not disclose how, if at all, the full order of protection has impacted Wolfe's ability to perform his job, the order itself provides: "Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (18 U.S.C. Section 922(g)(8))." Given the potential consequences of a full order of protection, upon review of such order, "it is incumbent that the trial courts exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act and in making sure that sufficient credible evidence exists to support **all elements** of the statute before entering a protective order." *Wallace,* 969 S.W.2d at 387 (emphasis added).

Under section 455.010(10), C.H. must establish by a preponderance of the evidence that he was "alarmed" by Wolfe's conduct, defined by section 455.010(10)(c) to mean fear of danger of physical harm at the hands of Wolfe. That fear must be reasonable. Section 455.010(10). C.H. did not meet this burden. The record here is devoid of **any** evidence that C.H. feared the danger of physical harm as a result of Wolfe's conduct. C.H. did not assert that Wolfe ever physically threatened him. C.H. did not, in his verified petition, check available boxes to suggest he believed that Wolfe had caused or attempted to cause him physical harm, or had placed or attempted to place him in apprehension of immediate physical harm. The genesis of C.H.'s verified petition seeking a full order of protection relates to repeated incidents

of verbal harassment, and to complaints about Wolfe's dog running loose. However, C.H. did not assert that Wolfe allowed his dog off leash to cause C.H. fear or apprehension of physical harm.[1] While C.H. testified that it was "kind of scary having ... somebody who's supposed to be an officer that carries a weapon out there staring in our windows," he did not assert that Wolfe's "staring" put him in reasonable fear of danger of physical harm. Further, Wolfe never entered upon C.H.'s property and has not been alleged to have physically approached C.H. at anytime. Although C.H. was clearly irritated by Wolfe's habit of parking his pickup truck on the street outside C.H.'s home, C.H. did not indicate that Wolfe's behavior caused him fear of danger of physical harm. Moreover, such fear, even if alleged, would not be reasonable, as Wolfe was lawfully parking his vehicle on a public street.

It appears the trial court was irritated by Wolfe's demeanor and by Wolfe's continued parking of his pickup truck on the street in front of C.H.'s house even after entry of the ex parte order. Upon finding that C.H. was entitled to a full order of protection, the trial court entered into the following exchange with Wolfe:

THE COURT: You're a Clay County deputy sheriff. You don't have to park your truck in front of his house. You can't convince me that there's no other parking space on that street that you can't park your truck ... So you don't have to park right there. And if you do park there, when you're having problems with the neighbor, it indicates something to me.

MR. WOLFE: You know, I've done it for 15 years. Correct, Your Honor.

THE COURT: I could care less....If you're having problems with that neighbor you don't—

Mr. WOLFE: And I have done over the past 15 years.

THE COURT: We'll take a recess before you're in trouble for interrupting for the last time.

Notwithstanding the trial court's understandable frustration with Wolfe's frequent failures to exercise good judgment, even with respect to his dealings with the trial court, "the stalking provision of the Adult Abuse Act was not meant to be a panacea for the minor arguments that frequently occur between neighbors." *Wallace*, 969 S.W.2d at 386. This record reveals, at best, a dispute between neighbors.

Our decision is in accord with *Wallace*. There, petitioner sought a full order of protection following the deterioration of a cordial relationship between neighbors, and the respondent's threats that he "was going to do something drastic" if the petitioner was not nicer to him, and the respondent's comment that he was "going to get her worse" when petitioner did not remove bricks that had found their way onto the respondent's property. *Id.* at 384. These threats were not sufficient to support a finding of "stalking" under section 455.010(10). *Id.* at 385.[2]

In *George v. McLuckie*, 227 S.W.3d 503 (Mo.App. W.D.2007), this court reversed the trial court's issuance of a full order of protection when the petitioner failed to

---

1. The dog bite C.H. suffered on July 8, 2008, was caused by another neighbor's dog, not Wolfe's dog. Although C.H. testified that Wolfe's dog "charged him" on that occasion, he did not indicate that experience caused him to be afraid of the dog, or, more relevant to this court's inquiry, that Wolfe was pur-

posefully directing or permitting his dog to "charge" C.H.

2. At the time *Wallace* was decided, section 455.010(10) did not define "stalking" in terms of causing "alarm," and thus fear of danger of physical harm, but rather as "when an adult purposely and repeatedly harasses or follows with the intent of harassing another

show by a preponderance of the evidence that the respondent's conduct (which included harassing text messages and driving by petitioner's place of employment and flipping petitioner off) constituted "alarm" as defined by section 455.010(10)(c). In *C.B. v. Buchheit*, 254 S.W.3d 210, 212 (Mo.App. E.D.2008), the petitioner sought a full order of protection against her mother-in-law, asserting that she "called her explicit names, put negative comments about her on the internet, threatened to have her daughter taken away, threatened to sue her, refused to leave her property on one occasion until escorted by the police, boxed up all her belongings in her and her husband's apartment on another occasion, and brought people [petitioner] did not know with her when she would pick up [petitioner's] daughter and would utter rude comments under her breath." The appellate court reversed the judgment granting the full order of protection, noting that, although the petitioner testified that her mother-in-law's conduct caused her fear of danger of physical harm, such fear was unreasonable. *Id.* at 213. The petitioner presented no proof of such fear and "offered no evidence of any physical altercations or other events that would make it reasonable for her [mother-in-law's] conduct to cause her fear of danger of physical harm." *Id.* Accordingly, the order of protection was vacated as it was not supported by substantial evidence. *Id.* Similar results have been reached in several other cases. *Schwalm v. Schwalm*, 217 S.W.3d 335 (Mo. App. E.D.2007); *McGrath v. Bowen*, 192 S.W.3d 515 (Mo.App. E.D.2006); *Towell v. Steger*, 154 S.W.3d 471 (Mo.App. S.D. 2005).

---

adult," with "harassing" being defined as engaging "in a course of conduct directed at a specific adult that serves no legitimate purpose, that would cause a reasonable adult to suffer substantial emotional distress." The underlying rationale of the decision in *Wal-*

## Conclusion

We cannot conclude, on the record as a whole, that C.H. met his burden to establish by a preponderance of the evidence that Wolfe's course of conduct, however inconvenient or irritating to C.H., caused him to fear the danger of physical harm at all, let alone reasonably. There is no substantial evidence to support a conclusion that C.H. was alarmed by Wolfe's conduct as required by section 455.010(10) and as defined by section 455.010(10)(c). Accordingly, the judgment is reversed, and the cause is remanded with instructions to the trial court to vacate the full order of protection.

All concur.

---

*lace* is equally applicable to the revised definition of "stalking," if not more so, as proof of a reasonable "fear of danger of physical harm" is arguably more difficult than proof that one has reasonably suffered emotional distress.