v.

Andrew **FOLEY**, Appellant.

No. ED 95681.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 18, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 2011.

Application for Transfer
Denied Jan. 31, 2012.

N. Scott Rosenblum, St. Louis, MO, for appellant.

Tonya D. Page, Jayne T. Woods, St. Louis, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Presiding Judge.

Andrew Foley appeals the trial court's judgment granting against him a full order of protection in favor of his former girlfriend, H.R. (Petitioner). Foley asserts that the trial court erred because the evidence was insufficient to support findings of stalking and harassment. Having reviewed the entire record, we find substantial evidence to support the trial court's judgment on the basis of harassment. Therefore, we affirm.

Given the highly fact-specific nature of cases arising under chapter 455, a thorough recitation of the evidence before the trial court is essential. Petitioner and Foley were in a romantic relationship for nearly two years. Petitioner described the relationship as "rocky from beginning to end." She testified that Foley abused alcohol excessively, and "when he was under

the influence of alcohol he was aggressive towards others, called me all kinds of names, [was] difficult to get along with, and it caused a lot of stress on our relationship." In August 2009, a physical altercation between the parties in a Las Vegas hotel room led to police intervention. Petitioner had herself photographed after that incident and adduced those photos into evidence before the trial court. Petitioner testified that this incident "was one of a couple of times that there was physical pushing back and forth." Foley claimed that he never hit or shoved Petitioner and that the marks on Petitioner were a result of his holding her to prevent her from hitting him,

A few weeks later Petitioner ended the relationship with Foley "because of his drinking," "his erratic behavior," and "the way that he spoke to me and treated me when he was under the influence." "It was so often that I couldn't live that way any longer." Though Petitioner asked Foley not to contact her, "he continually texted, called, emailed, and sent me Facebook messages." Petitioner took measures to block Foley's communications but was unable to block his emails and cell phone calls. In December, Petitioner informed Foley in writing, "I am tired of you contacting me. I want to be left alone." Nonetheless, "he continued emailing me and calling me ... months after we had been broken up ..."

So, in February 2010, Petitioner retained counsel, who sent Foley a cease-and-desist letter stating in pertinent part as follows:

This letter shall serve as a formal demand to cease and desist your contact and harassment of my client immediately, including but not limited to the following: contact via phone, text message and email; posting comments on your Facebook page or anybody else's Face-

book page referencing [Petitioner]; and coming anywhere near [Petitioner] or her residence. Failure to comply will immediately result in our seeking all appropriate civil and criminal relief with the court. ... Again, do *not* contact our client. Any correspondence shall be directed to our firm.

Upon receipt of this letter, Foley immediately contacted Petitioner's father "irate and erratic," "yelling at [Petitioner's] dad that he was a terrible piece of shit father." Foley himself confirms this description in a subsequent email to Petitioner stating, "since that worthless letter ... all I did was tell your dad what a piece of shit he is ..." During the evidentiary hearing, the trial court sought clarification about Foley's conduct:

Court: Who did you contact after you received that letter? Did you contact [Petitioner's counsel] or anyone else at the office?

Foley: No, I contacted [Petitioner].

Court: Even though the letter said, underlined—it says, "Again, do not—underline not—contact our client."

Foley: Correct.

[...]

Court: Your response to the letter was to contact the petitioner, correct?

Foley: Correct.

Undeterred, Foley "continued to contact [Petitioner] with no purpose." The record contains multiple additional emails from Foley in April and May. Certain messages involve the return of personal belongings. To the extent Petitioner contributed to the exchange, her communication depicts her efforts to return certain personal belongings to Foley, while in exchange he accuses her of stealing and "lying to my face." Other messages from Foley lack any particular purpose. Then at 2 a.m. on August 8—the couple's intended wedding day—

Foley phoned Petitioner 21 times in the span of 45 minutes and left four voicemails. He phoned and left a fifth voicemail later that afternoon. When asked to clarify the purpose of his calls, Foley responded, "I just wanted to talk to her."

Two days later, Petitioner filed the present action seeking an order of protection on the basis of stalking and harassment. In addition to the excerpts of her statement set forth above, Petitioner further explained:

> There is no purpose of the contact other than to harass me.... I am a single female residing alone. Due to respondent's erratic behavior, alcohol and possibly drug use, history of violence against others (respondent has previous charges against him) and the summer 2009 incident with me, said frequent contact with no purpose causes me alarming concern.

In concluding her testimony asking the court to issue a full order of protection, Petitioner summarized as follows:

> Counsel: Has respondent's behavior, constant contact with you, caused you emotional distress?
>
> Petitioner: Yes, it has.... I'm getting phone calls at 2:00 in the morning, and emails.... It's stressful that you just can't be left alone, asking a person, "Please leave me alone." ... and it just never seemed to matter.
>
> Counsel: Do you reside alone?
>
> Petitioner: Yes.

> Counsel: And does respondent's erratic behavior cause you concern as you are residing alone?
>
> Petitioner: Yes, it does.

■ After considering the foregoing facts and evidence, the trial court found that Petitioner had proven her allegations of stalking and harassment. Foley's appeal challenges the sufficiency of the evidence supporting the trial court's findings.[1]

## Standard of Review

■ Our review of this case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm unless the trial court's judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. "Substantial evidence has been defined as competent evidence from which the trier of fact could reasonably decide the case." *Towell v. Steger*, 154 S.W.3d 471 (Mo.App. S.D. 2005). Further, we must consider the evidence and reasonable inferences therefrom in a light most favorable to the judgment and defer to the trial court's determinations of credibility. *In re E.F.B.D.*, 245 S.W.3d 316, 320 (Mo.App. S.D.2008); *A.S. v. Decker*, 318 S.W.3d 751, 753 (Mo.App. W.D.2010). "The trial judge is in the best position to gauge the credibility of the witnesses and to determine the existence of any reasonable apprehension of abuse that a petitioner may harbor; conversely, the judge can determine whether a given

1. Foley's two points relied on challenge the sufficiency of the evidence supporting the trial court's finding of stalking. Neither addresses the court's finding of harassment as an independent basis for the order of protection, which Petitioner defends in her responsive brief. Though in his reply brief Foley attempts to argue that Petitioner abandoned her allegations of harassment when her counsel clarified to the trial court that the theory of the case was stalking as opposed to actual

abuse, we reject Foley's semantics. It is clear from the record that Petitioner alleged harassment in her petition, she presented evidence supporting that allegation at trial, and the court found that she met her burden of proof. One could argue that Foley unwittingly waived this issue on appeal. However, in furtherance of this court's policy to decide cases on the merits whenever possible, we elect to review the record and the judgment as a whole.

respondent appears capable of the feared abuse." *Parkhurst v. Parkhurst*, 793 S.W.2d 634, 636 (Mo.App. E.D.1990).

## Discussion

### *Stalking*

Initially, Foley asserts that the evidence was insufficient to support a finding of stalking. "Stalking is when an adult purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct." § 455.010(10). This definition contains both subjective and objective elements of alarm. "Alarm means to cause fear of danger of physical harm." § 455.010(10)(a). Foley contends that Petitioner failed to prove that his conduct subjectively caused *her*, or objectively would cause a reasonable person in her situation, to fear a danger of physical harm. We must agree.

■ "A plaintiff is required to do more than simply assert a bare answer of 'yes' when asked if he or she was alarmed." *C.B. v. Buchheit*, 254 S.W.3d 207, 209 (Mo.App. E.D.2008); *Schwalm v. Schwalm*, 217 S.W.3d 335, 337 (Mo.App. E.D.2007). Such is the record before this court. Petitioner provided no direct testimony articulating that she was in fear of physical harm at the hands of Foley. She merely replied in the affirmative when counsel asked her if Foley's conduct caused her "concern." We are left, then, with a circumstantial record that, even viewed in a light most favorable to the judgment, does not support a reasonable inference that Foley's conduct, albeit obnoxious, caused Petitioner, or would cause a reasonable person in Petitioner's situation, to fear for her physical safety. While this point is granted, it is not fatal to the judgment.

### *Harassment*

■ The parties also dispute whether the evidence is sufficient to support the trial court's judgment granting a full order of protection on the basis of harassment. Harassment is defined as:

> Engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to another adult and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner.

§ 455.010(1)(d). The phrase "substantial emotional distress" means that "the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day to day living." *C.B. v. Buchheit*, 254 S.W.3d at 210. "Conduct that merely causes alarm or distress to the victim but would not cause substantial emotional distress to a reasonable person does not qualify as harassment." *Id.* quoting *State v. Schleiermacher*, 924 S.W.2d 269, 274 (Mo. banc 1996).

■ Like stalking, harassment contains both objective and subjective criteria, namely that the respondent's conduct would cause a reasonable person to suffer substantial emotional distress and the conduct must actually cause substantial emotional distress to the petitioner. § 455.010(d)(1). Here, however, the record contains sufficient evidence to invoke this court's deference to the trial court's findings of both. "Substantial evidence has been defined as competent evidence from which the trier of fact could reason-

ably decide the case." *Towell v. Steger*, 154 S.W.3d 471 (Mo.App. S.D.2005). The record before us paints a clear picture of Foley's outrageous and demonstrably unstoppable conduct, to wit: his drunken outbursts and verbal abuse throughout the relationship; his alleged aggression toward others when under the influence of alcohol; a pushing and screaming incident that prompted other hotel guests to call the police; Foley's repeated phone calls, text messages, emails, and Facebook messages even after Petitioner told him to leave her alone; Foley's complete disregard for a cease-and-desist letter from Petitioner's counsel; an obscenity-laced insulting phone call from Foley to Petitioner's father; Foley's hostile and accusatory emails to Petitioner in the course of returning their respective belongings; and his 21 phone calls at 2 a.m. seeking "just to talk to her" on the couple's canceled wedding date. Objectively, it is reasonable to infer that a reasonable person on the receiving end of Foley's actions would suffer substantial emotional distress.

▇ Likewise, as to the subjective test, the record is adequate to support the trial court's inference that Petitioner actually suffered substantial emotional distress. Petitioner was sufficiently distraught by Foley's conduct to hire legal counsel to send Foley a cease-and-desist letter directing Foley, in no uncertain terms, not to contact her. Unflappable, Foley's immediate response to this letter was to pick up the phone and berate Petitioner's father and eventually resume email missives to Petitioner, In addition, the record contains Petitioner's account of the emotional distress that she experienced as a result of Foley's 2 a.m. phone offensive:

> Twenty-one phone calls from approximately 2:00 a.m. to about 2:45 in the morning. Back to back phone calls,

partnered with four voicemails that were left. I was upset. My phone rang so continuously—I only have a cell phone, I don't have a land line at my house—I couldn't call out to talk to anyone or anything. My phone just continually rang for that amount of time. And then I got on and called a friend and I said, "What should I do? ... [H]e's calling me. It won't stop."

Petitioner filed for an *ex parte* order of protection two days later and testified at trial about the extent of her emotional distress caused by Foley's persistent haranguing over the months since she terminated their relationship.

> It causes me emotional distress because the relationship was very difficult in itself.... [Y]ou just want out of it and you want it to end ... I just really want to move forward with my life and it's difficult for me to do that when I'm getting phone calls at 2:00 in the morning, and emails ... It's stressful that you just can't be left alone, asking a person, "Please leave me alone. I want to move on with my life." And it just—on still multiple occasions requesting to be left alone, and it just had never seemed to matter.

Petitioner's testimony suggests that Foley's conduct produced "something markedly greater" than a quotidian level of stress that Petitioner or any other reasonable person would expect to endure in "day to day living." Petitioner was unable to move on with her life and felt powerless to stop Foley's harassment even with the help of legal counsel. Chapter 455 is intended to afford Petitioner a remedy for this situation.

As the dissenting opinion illustrates, reasonable minds may differ as to whether Petitioner experienced substantial emotional distress and whether a reasonable person would have experienced the same.

But we do not retry the case; rather, we review the evidence and reasonable inferences in a light most favorable to the judgment. *Brethorst v. Brethorst,* 50 S.W.3d 864, 866 (Mo.App. E.D.2001). Mindful of this court's standard of review, we affirm the trial court's judgment granting Petitioner a full order of protection on the basis of harassment.

GARY M. GAERTNER, JR., J., concurs.

ROY L. RICHTER, J., dissents in separate opinion.

ROY L. RICHTER, Judge.

I respectfully dissent. I find no substantial evidence in the record to support the judgment based on the definition of harassment in Chapter 455 as interpreted by prior decisions. Appellant's behavior was undoubtedly boorish, but a review of the evidence before the trial court does not support a finding that Respondent suffered from substantial emotional distress.

Respondent's counsel wrote a letter to Appellant on February 24, 2010, advising Appellant to cease and desist from contacting Respondent. A number of subsequent e-mails exchanged between the parties were offered into evidence. Those e-mails, dated April 14, 2010, April 20, 2010 and May 3, 2010, clearly demonstrate that Respondent was not overly concerned about having contact with Appellant even after counsel wrote a letter demanding no further communication between the parties.

The majority cites a profanity-laced phone call—but that phone call was not made to Respondent, it was made to her father—berating him for not enrolling Respondent in a 4–year college or university, which would have enhanced Respondent's professional options.

Appellant's multiple early morning phone calls on August 8, 2010, are the genesis of the Full Order of Protection. As stated in the majority opinion:

> The course of conduct must be such as would cause a reasonable adult to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner.

Section 455.010(1)(d) RSMo Cum.Supp. 2009. The phrase "substantial emotional distress" means that "the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day to day living." *C.B. v. Buchheit,* 254 S.W.3d 207, 210 (Mo.App. E.D.2008). "Conduct that merely causes alarm or distress to the victim but which would not cause substantial emotional distress to a reasonable person does not qualify as harassment." *Id.* (quoting *State v. Schleiermacher,* 924 S.W.2d 269, 274 (Mo. banc 1996)).

Clearly the communications that continued after the letter of February 24, 2010, were not overly upsetting to Respondent, since she exchanged e-mails with the Appellant in April and May of 2010. Appellant's irate phone call was made to Respondent's father, not to Respondent. As the majority points out, stalking is not a viable basis for the Order entered. The mutual pushing and shoving incident in Las Vegas took place a year before an Order was requested. Therefore, the Order in this case is obviously based on the middle-of-the-night phone calls. Appellant's boorish behavior would undoubtedly cause some degree of alarm or distress, but this record does not support the conclusion that a reasonable person would suffer *substantial emotional distress.* Respondent's testimony is that she was "upset" and that she found it "stressful" that Appellant did not leave her alone. Re-

spondent did not answer any of the 22 calls, and the voicemail messages left by Appellant during that time period were not threatening.

Respondent had a viable option to curb Appellant's behavior. "Knowingly mak[ing] repeated unwanted communication to another person" is the statutory definition of the crime of harassment. Section 565.090.1(5) RSMo Cum.Supp. 2009. The subjective and objective requirements of the Adult Abuse Act that prove fatal to this claim are absent from the criminal statute. Appellant's actions on the morning of August 8 would clearly qualify as harassment as defined in Chapter 565, but they do not qualify under Chapter 455.

In the absence of substantial evidence to support a finding that a reasonable person would have suffered substantial emotional distress, I would reverse the judgment.