

# In the Missouri Court of Appeals
# Eastern District

**DIVISION THREE**

| | | |
|---|---|---|
| J.R.C., | ) | No. ED111715 |
| | ) | |
| Petitioner/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | No.  23SL-PN01357 |
| | ) | |
| S.L.F., | ) | Honorable Julia Pusateri Lasater |
| | ) | |
| Respondent/Appellant. | ) | Filed: March 12, 2024 |

S.L.F. appeals the judgment entered by the Circuit Court of St. Louis County granting a full order of protection under Missouri's Adult Abuse Act, Sections 455.005 – 455.090 RSMo. (2016), against him and in favor of his former girlfriend, J.R.C. Because we conclude that the trial court's judgment is not supported by substantial evidence, we reverse the trial court's judgment entering the full order of protection and vacate the order.

### Factual and Procedural History

J.R.C. and S.L.F. were romantically involved for about six months. J.R.C. filed a petition for an order of protection against S.L.F. on March 17, 2023, alleging that S.L.F. stalked and harassed her. The trial court entered an *ex parte* order of protection against S.L.F. on that date.

The trial court conducted a hearing on J.R.C.'s petition. During the hearing, the following evidence was adduced: J.R.C. testified that on one occasion after she lunged at S.L.F., he pushed her back against a wall. This "kind of startled" her. After that, they broke up and got back

1

together. J.R.C. testified that after breaking up again, S.L.F. constantly contacted her through multiple phone numbers, Cash App, Chime, and different social media accounts that she believed to be his. The record before us contains neither the messages nor content of these messages.[1] J.R.C. testified that S.L.F. left items, including her jacket and a gift, on her doorstep on February 28, 2023 as they had mutually agreed. After this visit, J.R.C. testified that she bought cameras. During cross examination, J.R.C. testified that she also left items on S.L.F.'s doorstep. S.L.F. admitted to contacting J.R.C. via Cash App and leaving belongings that she wanted back on her doorstep.

J.R.C. further testified that S.L.F. sent her and her aunt a text message, along with a picture of J.R.C., her dog, and S.L.F, stating that J.R.C. was "digging a hole." No further details were given regarding the context of the text message. J.R.C. also testified that she sings and S.L.F. promoted one of her singing events on his social media page as "an intimidation thing," but he did not attend the event. J.R.C. testified that an unknown account on Twitter, that she believed to be S.L.F., responded to her post about allergies, stating that she should take allergy drops and named a medication that S.L.F. had previously bought her. J.R.C. described S.L.F.'s repeated communications as "harassment" and that she was "just sick of it."

On cross examination, S.L.F.'s attorney asked J.R.C. if she was alarmed by S.L.F. dropping off the items on her porch even though she knew he was planning on dropping them off. J.R.C. responded, "yes, it did alarm me." J.R.C. testified to no other encounters, nor did she testify to any threats or fear of physical harm.

---

[1] None of the content of these messages were introduced in the trial court. Respondent also filed no brief to give any content or context of these messages. While Respondent was not required to file a brief, it could have helped to supplement the sparse record on appeal.

After hearing the evidence, the trial court announced from the bench that "there is sufficient evidence to issue a full order of protection." In its judgment, which consisted of a check-the-box form, the court found that J.R.C. had "proven allegations of domestic violence, stalking, and/or sexual assault." On April 17, 2023, the trial court entered a full order of protection preventing S.L.F. from contacting J.R.C.; entering J.R.C.'s school, employment, or home; and coming within 500 feet of J.R.C for one year. S.L.F. appeals.

### Standard of Review

In reviewing a trial court's ruling on full orders of protection, this Court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *L.M.M. v. J.L.G.,* 619 S.W.3d 593, 596 (Mo. App. E.D. 2021). We view "the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." *Bateman v. Platte Cty.,* 363 S.W.3d 39, 43 (Mo. banc 2012). Substantial evidence is "competent evidence from which the trier of fact could reasonably decide the case." *H.R. v. Foley,* 356 S.W.3d 210, 213 (Mo. App. E.D. 2011).

The trial courts must ensure that sufficient credible evidence exists to support all elements of the statute before entering a full order of protection "because of the potential stigma that may attach to an individual who is labeled a 'stalker' under the Missouri Adult Abuse Act" ("the Act"). *K.L.M. v. B.A.G.,* 532 S.W.3d 706, 709 (Mo. App. E.D. 2017) (quoting *M.L.G. v. R.W.,* 406 S.W.3d 115, 117 (Mo. App. E.D. 2013)). To be entitled to relief under the Act, the "petitioner must prove allegations in a petition for an order of protection by a preponderance of the evidence." *L.A.C. v. R.A.P.,* 671 S.W.3d 419, 423 (Mo. App. E.D. 2023).

***Discussion***

In his sole point on appeal, S.L.F. challenges the trial court's entry of the full order of protection against him. He contends no substantial evidence supported the court's determination that J.R.C. had proven domestic violence and stalking under the Act.

During the hearing, the trial court announced from the bench that "there is sufficient evidence to issue a full order of protection." In its judgment, which consisted of a check-the-box form, the court found that J.R.C. had "proven allegations of domestic violence, stalking, and/or sexual assault." Because J.R.C. did not allege sexual assault, no evidence of sexual assault was adduced at the hearing, and the trial court did not expressly find that sexual assault occurred, we do not consider it. We instead address the trial court's determination regarding domestic violence and stalking.

"Domestic violence" is "*abuse* or *stalking* committed by a family or household member, as such terms are defined in this section." Section 455.010(5) (emphasis added). Among others, a "household member" can be "any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim." Section 455.010(7). The parties do not dispute that S.L.F. qualifies as a "household member" because the parties were at one time in a romantic relationship.

## I. Domestic Violence - Abuse

"Abuse" constitutes one form of "domestic violence," and includes "assault," "battery," and "harassment." Section 455.010(1).[2] Because the trial court's judgment implicates these three forms of abuse, we examine each and the supporting evidence in turn.

---

[2] "Abuse" also includes "coercion," "sexual assault," and "unlawful imprisonment" as defined by Section 455.010(1). J.R.C. made no allegations of these forms of abuse, nor did she introduce evidence to suggest they had occurred.

4

### A. Battery

"Battery" means "purposely or knowingly causing physical harm to another with or without a deadly weapon." Section 455.010(1)(c). J.R.C. testified that on one occasion S.L.F. pushed her back against a wall after she had lunged at him. This "kind of startled" J.R.C. However, she admitted in her testimony that she lunged at him first, making her the initial aggressor. J.R.C.'s testimony lacked any allegations of pain, injury or physical harm caused by S.L.F. from that one occasion. J.R.C. did not testify to any sort of threat or physical altercation between her and S.L.F. that warranted her to lunge at S.L.F. Nor does the record support that any threats of physical harm were made or caused by S.L.F. Without any testimony whatsoever alleging physical harm, there was no substantial evidence to support a conclusion that S.L.F. committed battery as defined by Section 455.010(1)(c) by purposely and knowingly causing J.R.C. physical harm.

### B. Assault

Under the Act, "assault" means "purposely or knowingly placing or attempting to place another in fear of physical harm." Section 455.010(1)(b). In her petition, J.R.C. stated she was "afraid" because S.L.F. texted her "I know where you live already, idk why you're acting scared now." J.R.C. also stated in the petition that she was "in fear because he will not let go… I am having a hard time sleeping and it makes it worse that I work from home and feel like a sitting duck." Finally, J.R.C. also stated in the petition that she was "afraid to be at home because he knows the entry code and has left items." Indeed, J.R.C.'s petition alleged facts that warranted an ex parte order of protection and hearing. However, J.R.C. did not testify during the hearing regarding any of these alleged facts. The petition is not self-proving. In order to be entitled to relief, J.R.C. must prove allegations in a petition by a preponderance of the evidence. *L.A.C.*, 671

5

S.W.3d at 423. The record lacks any evidence that S.L.F. placed or attempted to place J.R.C. in fear of physical harm or that he ever threatened or attempted to threaten her physical safety.

Even viewed in a light most favorable to the judgment, there is no substantial evidence in the record that S.L.F.'s conduct purposefully or knowingly placed or attempted to place J.R.C. in fear of physical harm. In cases where our Appellate Courts have supported a finding that the appellant purposefully or knowingly placed or attempted to place the respondent in fear of physical harm, there are, at a minimum, allegations of either threats of physical harm or actions of physical violence. *See Cuda v. Keller,* 236 S.W.3d 87, 90 (Mo. App. W.D. 2007) (holding that "calling Cuda derogatory names while standing within inches of him, bumping into him, and repeatedly challenging him to a fight during a heated discussion could reasonably be construed as a knowing attempt to place Cuda in fear of physical harm"); *see also M.D.L. v. S.C.E.,* 391 S.W.3d 525, 531 (Mo. App. E.D. 2013) (holding that testimony alleging appellant drugged respondent, drove erratically around her, slashed tires of a car parked in her driveway, and committed many instances of past violence were sufficient to support a finding of assault); *L.A.C.,* 671 S.W.3d at 425 (holding that evidence of appellant placing a hand on respondent's shoulder and trying to push into her house, threatening to burn her house with her and her dogs in it while standing in her front yard, and respondent calling the police and staying with a friend instead of her home were sufficient to support a protective order based on assault).

Here, however, J.R.C. made no allegations in the record that can be reasonably construed as S.L.F. placing or attempting to place her in fear of physical harm. J.R.C. only testified that on one occasion, after she had lunged at him, S.L.F. pushed her back to the wall which "kind of startled" her. J.R.C. did not testify to physical harm, fear of physical harm, or acts of past violence. J.R.C. also testified the she received unwanted text messages, some of which she

believed to be from S.L.F., but she did not give any context to the messages or explain how or why they were threatening. Further, while S.L.F. left her belongings on her doorstep as they mutually agreed to do, J.R.C. testified that he immediately left. Thus, there was no substantial evidence to support all the elements of the statute to conclude that S.L.F. committed assault as defined by Section 455.010(1)(b).

### C.      Harassment

"Harassment" also constitutes a third form of "abuse," and is "a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress…and serves no legitimate purpose." Section 455.010(1)(e). "The course of conduct must be such as would cause a reasonable adult…to suffer *substantial* emotional distress and must actually cause *substantial* emotional distress to the petitioner…" *Id.* (emphases added). Thus, harassment relies on both objective and subjective criteria, that the conduct would cause a reasonable person to suffer substantial emotional distress and the conduct must actually cause the petitioner substantial emotional distress. *H.R.,* 356 S.W.3d at 214.

The term "substantial emotional distress" requires that "the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day to day living." *Id.* (quoting *C.B. v. Buchheit,* 254 S.W.3d 207, 210 (Mo. App. E.D. 2008)). Conduct that causes alarm or distress to the petitioner, but would not cause *substantial* emotional distress to a reasonable adult, does not qualify as harassment. *Id.*

In *C.B. v. Buchheit,* the appellant called C.B. explicit names, made several negative posts on the internet, threatened to take C.B.'s daughter away or sue, and refused to leave C.B.'s

property until escorted away by police. *C.B.,* 254 S.W.3d at 212. Even so, the court held that the evidence was insufficient to support a full order of protection based on abuse by harassment because it "did not rise to the level of provoking a reasonable person to suffer substantial emotional distress." *Id.* at 213.

Here, S.L.F.'s conduct was less extreme than the alleged conduct in *Buchheit,* and thus likewise would not provoke a reasonable person to suffer *substantial* emotional distress, which is necessary to establish harassment under Section 455.010(1)(e). When returning J.R.C.'s belongings, S.L.F. left items on J.R.C.'s doorstep and then left immediately without incident. After this visit, J.R.C. installed cameras. J.R.C. testified that S.L.F. repeatedly contacted her after she told him to stop. Admittedly, the repeated contact involved more than one incident, which is one element of harassment. However, the only messages she described were not negative, inflammatory, or threatening. The messages may have been unwanted and annoying, but we cannot say the messages in the record would cause a reasonable adult to experience substantial emotional distress. By itself, repeated communication "typically does not rise to the level of harassment, because while annoying and boorish, such conduct would not cause substantial emotional distress in a reasonable person." *H.E.S. v. T.J.B.,* 628 S.W.3d 234, 237 (Mo. App. E.D. 2021) (quoting *Lawyer v. Fino,* 459 S.W.3d 528, 532 (Mo. App. S.D. 2015)).

Conduct that may merely cause distress to J.R.C. but would not cause substantial emotional distress to a reasonable adult does not qualify as harassment under the Act. *H.R.,* 356 S.W.3d at 214. Further, J.R.C. only described the repeated messages as "harassment" and that she was "sick of it," but she did not allege any substantial emotional distress during the hearing. J.R.C.'s distress must have been "markedly greater than the level of uneasiness, nervousness,

8

unhappiness, or the like which are commonly experienced in day to day living." *Id.* at 214 (quoting *C.B.,* 254 S.W.3d at 210).

Further, if the course of conduct serves a legitimate purpose, then there is no harassment. *See* Section 455.010(1)(e). "For conduct to have 'no legitimate purpose,' it must be found to be not sanctioned by law or custom, to be unlawful, or not allowed." *H.E.S.,* 628 SW3d at 237 (quoting *Lawyer,* 459 S.W.3d at 533). In addition to not causing a reasonable person to suffer substantial emotional distress, the visit to drop off belongings on J.R.C.'s doorstep had a legitimate purpose, and she admitted that they each agreed to leave items on the other's doorsteps. S.L.F.'s conduct of dropping off items and immediately leaving peacefully cannot be construed as being unsanctioned by law or custom. Since it had a legitimate purpose, this conduct cannot support a full order of protection. *See R.J.D. v. Gauert,* 622 S.W.3d 703, 710 (Mo. App. W.D. 2021) (holding that landowner's act of following trespassers around property had a legitimate purpose and thus could not support a full order of protection); *see also Clark v. Wuebbeling,* 217 S.W.3d 352, 355 (Mo. App. E.D. 2007) (finding that communication between parents regarding care of children had a legitimate purpose); *c.f. J.W.M. v. D.L.O.,* 643 S.W.3d 903, 908 (Mo. App. E.D. 2022) (holding that slashing tires, threatening to involve violent father, and stating that the person was "worth more dead than alive" was conduct that "was threatening and violent and readily crossed the threshold between normal social interactions and stalking" and thus no longer had a legitimate purpose).

## II. Domestic Violence - Stalking

"Stalking" also qualifies as "domestic violence." Section 455.010(5). "Stalking" occurs "when any person purposely engages in an unwanted course of conduct that causes alarm to another person…when it is reasonable in that person's situation to have been alarmed by the

conduct." Section 455.010(15). As it applies to stalking, a "course of conduct" is "a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose." Section 455.010(15)(b). The statute enumerates that following the other person and unwanted communication are examples of such conduct. *Id.*

"Alarm" means to cause fear of danger of physical harm. Section 455.010(15)(a). *"Alarm contains both a subjective and objective component." K.L.M.,* 532 S.W.3d at 710. Thus, the record must contain sufficient evidence showing both that S.L.F.'s conduct caused J.R.C. a subjective fear of danger of physical harm, and that a reasonable person in J.R.C.'s situation would have feared physical harm. *Id.* Considering only the evidence presented in the record, we find the evidence insufficient to support either an objective or subjective fear of physical harm from S.L.F.'s actions.

While J.R.C. alleged in her petition that she was "afraid," J.R.C. gave no testimony during the hearing detailing that she feared physical harm from S.L.F. At the hearing, J.R.C. testified that she was "kind of startled" when S.L.F. pushed her against the wall, after she lunged at him. J.R.C. admitted that she lunged at S.L.F. first, and she testified to no threats of physical harm or fear that caused her to lunge at him. Nevertheless, J.R.C.'s testimony that she was "kind of startled" is insufficient to show subjective fear of physical harm. *See E.A.B. v. C.G.W.,* 415 S.W.3d 795, 800 (Mo. App. E.D. 2013) (holding that while petitioner alleged he was afraid in the petition, the only testimony at trial that petitioner was "kind of worried" because of respondent's behavior was insufficient to prove subjective fear of physical harm); *see also M.D.L.,* 391 S.W.3d at 530 (holding there was insufficient evidence of stalking without any testimony that the specific conduct caused the victim to fear physical harm, despite testimony listing erratic driving, slashing tires, and threats to ruin the victim's reputation).

10

J.R.C. also testified that S.L.F. sent a text to her and her aunt that said J.R.C. was "digging a hole" with a picture of J.R.C., her dog, and S.L.F. In her testimony, J.R.C. did not give context to this text message or explain how or why it was threatening. Here, the record does not contain the exhibit, and any threat that may or may not be contained is not clear from the limited record before us. J.R.C. also testified that she bought cameras for the first time after S.L.F. left her belongings on her doorstep. J.R.C. did not testify that she feared physical harm, and she did not explain why she found her belongings left on her doorstep to be threatening. J.R.C. merely responded "yes, it did alarm me" when asked on cross examination if she was alarmed when S.L.F. dropped off items that J.R.C. knew S.L.F. would drop off at some point. However, this testimony was regarding conduct from S.L.F. that had a legitimate purpose. Both parties mutually agreed to drop off items for the other. J.R.C. also dropped off S.L.F.'s belongings at his doorstep. Here, S.L.F. dropped off the items and immediately left without any evidence of threats of physical violence. Therefore, this act of placing belongings on J.R.C.'s porch cannot support a full order of protection. Even assuming the action had no legitimate purpose, a party seeking a full order of protection must do more than simply answer "yes" to questions about whether she was alarmed. *H.R.,* 356 S.W.3d at 214. Viewed in a light most favorable to the judgment, the record does not support a reasonable inference that J.R.C. feared physical harm from S.L.F.

The record is also insufficient to establish an objective fear of physical harm. J.R.C. made no allegations at the hearing that any of the communications from S.L.F. were threatening or even angry. A history of angry communications without threats of physical violence is insufficient to meet the objective component of alarm. *L.M.M.,* 619 S.W.3d at 597. During the only alleged physical altercation, J.R.C. admitted she initiated it by lunging at S.L.F. first and she

did not allege any injuries, threats, or fear from S.L.F. Again, J.R.C. made no allegations that S.L.F. made threats, lingered, or stayed on her property when he dropped off her belongings on her porch, even if it was assumed that S.L.F. had no legitimate purpose to be there. Viewed in a light most favorable to the judgment, the record does not support a reasonable inference that a reasonable adult would have feared physical harm from S.L.F.

Missouri's Adult Abuse Act was not designed to resolve minor arguments between adults. *L.A.C.,* 671 S.W.3d at 423. There exists great potential for abuse of the Act, and real harm can result from its improper use, including the shame that may attach to the Respondent who is ultimately labeled a stalker. *Id.* Thus, courts must be certain that sufficient credible evidence supports all elements required for a protective order. *K.L.M.,* 532 S.W.3d at 709. We grant S.L.F.'s point on appeal because the record does not contain substantial evidence to support the trial court's determination that J.R.C. proved either domestic violence or stalking.

### *Conclusion*

The trial court's entry of the full order of protection against S.L.F. is not supported by substantial evidence. Therefore, we reverse the trial court's judgment and vacate the order.

_____
Angela T. Quigless, Judge

Lisa P. Page, P.J., and
Gary M. Gaertner, Jr., J., concur.

12